CHAMPION SPARK PLUG COMPANY, Appellant and Cross–Appellee.

v.

FIDELITY AND CASUALTY COMPANY OF NEW
YORK et al., Appellees and Cross–Appellants.

[Cite as *Champion Spark Plug Co. v. Fid. & Cas. Co.
of New York* (1996), 116 Ohio App.3d 258.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L-94-374.

Decided April 19, 1996.

*Michael H. Ginsberg, John M. Majoras* and *Stephan I Voudris,* for appellant/cross-appellee, Champion Spark Plug Company.

*John B. Robertson, David E. Trainor* and *Cormac B. DeLaney,* for appellees/cross-appellants, Fidelity and Casualty Company of New York, Glens Falls Insurance Company, and Lumbermen's Mutual Casualty Company.

*Peter P. McNamara* and *Michael E. Hyrne,* for appellee/cross-appellant, Fireman's Fund Insurance Company.

---

HANDWORK, Judge.

This is an appeal from a summary judgment entered by the Lucas County Court of Common Pleas in a case involving a dispute over whether appellant, Champion Spark Plug Company ("Champion"), is entitled to insurance coverage from appellees, Fidelity and Casualty Company of New York, Glens Falls Insurance Company, Lumbermen's Mutual Casualty Company ("primary insurers"), and Fireman's Fund Insurance Company ("excess insurer"). This is also a cross-appeal from a judgment entered by the Lucas County Court of Common Pleas asking this court to determine whether cross-appellee, Champion, inadvertently produced a document during discovery that is subject to an attorney-client privilege and that must be returned by cross-appellants, the primary and excess insurers.

This case first began when Champion filed a complaint for a declaratory judgment in the Lucas County Court of Common Pleas on September 27, 1991.[1] The complaint revealed that pursuant to actions taken by the United States Environmental Protection Agency ("EPA"), Champion was identified as a party liable for pollution cleanup costs at a now closed factory in Pennsylvania and at a landfill in Ohio. Champion signed consent orders with the EPA relating to both of the sites. Champion then filed claims for insurance coverage relating to the Pennsylvania site with the primary insurers and the excess insurer. However, each of the insurers denied coverage, reserved rights, or refused to respond to the notice of claim filed by Champion. Accordingly, Champion brought suit against the primary and excess insurers in the Lucas County Court of Common Pleas. The suit was the first notice any of the insurers had regarding the claims relating to the Ohio landfill.

---

1. The complaint that was initially filed named two additional insurance companies as defendants and a subsidiary of Champion Spark Plug Company as a second plaintiff. However, after the trial court granted leave, an amended complaint was filed that removed the two insurance companies and the subsidiary of Champion Spark Plug Company as parties in this case.

After answers were filed and discovery was conducted, the insurers filed a joint motion for summary judgment. The insurers argued that the evidence gleaned from discovery showed that none of the insurers owed insurance coverage to Champion for either of the sites because two conditions for coverage contained in the insurance contracts were breached. The two conditions breached were (1) that prompt notice of the claim was to be given, and (2) that no voluntary payments or settlements were to be made by Champion without prior notice to and consent of the insurers.

Champion opposed the joint motion for summary judgment arguing that (1) genuine issues of material fact remained regarding whether notice to the primary and excess insurers was late; (2) even if the notice was late, the primary and excess insurers did not demonstrate any prejudice due to the late notice; and (3) genuine issues of fact remain regarding whether the consent orders signed by appellant with the EPA were voluntary settlements that precluded insurance coverage. In addition, Champion filed a motion to compel the return of an inadvertently produced document, a motion to strike, and a motion for a protective order. All of the motions related to a letter the insurers attached to their joint motion for summary judgment. The letter was from outside counsel hired by Champion and was addressed to in-house counsel and to a corporate officer. Champion argued that the letter was subject to the attorney-client privilege and that it had been inadvertently produced. The motions were opposed by the primary and excess insurers.

On November 16, 1994, the trial court filed an opinion and judgment entry under seal. In the opinion and judgment entry, the court ruled that the disputed letter had been inadvertently produced. The trial court granted the motion to compel the return of the letter, but denied the motion to strike and the motion for a protective order. The insurers were ordered to return all copies of the letter to Champion within thirty days of the court's order.

The trial court filed a second opinion and judgment entry on November 21, 1994, in which it ruled that Champion's notices of its claims filed with the primary insurers were not timely as a matter of law. The trial court granted summary judgment to the primary insurers. The trial court also ruled that the excess insurer was not entitled to summary judgment on the issue of late notice because a material issue of fact remained in dispute regarding when Champion could have anticipated that the claims would reach the monetary levels required to trigger the excess insurance. However, the trial court did grant summary judgment to the excess insurer on another basis: that Champion had breached its contract with the excess insurer when it signed a consent order with the EPA without first contacting the excess insurer.

After the second opinion and judgment entry was filed, the parties brought this appeal and cross-appeal. We will first discuss the issues raised in the appeal.

Champion has presented four assignments of error on appeal:

"ASSIGNMENT OF ERROR NO. 1

"The trial court erred in finding that under Ohio law insurers do not have to prove prejudice as a necessary element of a late notice defense.

"ASSIGNMENT OF ERROR NO. 2

"The trial court erred by granting summary judgment because a genuine issue of fact exists with respect to whether the defendant insurers were prejudiced by the timing of plaintiff's notice.

"ASSIGNMENT OF ERROR NO. 3

"The trial court erred by concluding that no issue of fact existed with respect to whether the notice provided by Champion was late and by improperly weighing evidence while considering the summary judgment motion.

"ASSIGNMENT OF ERROR NO. 4

"The trial court erred in concluding that there was no genuine issue of material fact with respect to the insurers' voluntary payments defense."

Since all four assignments of error relate to whether summary judgment was properly granted in this case, we begin by reviewing Civ.R. 56(C), which governs summary judgment.

Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Keeping this standard in mind, we now turn to the interrelated arguments presented relating to the first, second, and third assignments of error.

■ We first consider the threshold question of whether Champion provided timely notice of its claims to the primary insurers. The trial court ruled that no question of fact remains on this issue and that the notice of claims provided to the

primary insurers was late as a matter of law. Champion argues that a genuine issue of fact on this issue does remain in dispute.

Champion acknowledges that the insurance policies all required Champion to give the insurers notice of an accident or occurrence "as soon as possible" and to give the insurers immediate notice of any claims or demands. However, Champion argues that when the test announced by the Ohio Supreme Court in *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 532 N.E.2d 730, is applied in this case, a question of fact remains as to whether Champion's notice of its claims to the insurers was late.

The test from *Ruby v. Midwestern Indemn. Co.* that Champion cites is as follows:

"A provision in an insurance policy requiring 'prompt' notice to the insurer requires notice within a reasonable time in light of all the surrounding facts and circumstances." *Id.* at syllabus.

Champion argues that when all the surrounding facts and circumstances in this case are considered, a question of fact remains regarding whether it gave notice of its claims to the insurers promptly. Champion also argues that whether notice was promptly given is always a question of fact for the jury.

This court has previously addressed issues similar to those raised by Champion's arguments in this case. This court stated:

"Under Ohio law, a provision in an insurance policy which requires 'prompt' notice to the insurer of an accident, occurrence or a loss requires notice within a reasonable time in light of all the surrounding facts and circumstances. * * * This rule has been extended by case law to include insurance policies which place a duty on the insured to notify his insurer of a potential claim 'as soon as practicable.' * * * Generally, the question of whether notice was timely given is a question of fact for the jury. * * * In these cases, the burden is on the insurer to establish prejudice resulting from the delay. * * * However, where the facts are not in dispute and reasonable minds could not draw conflicting inferences from that evidence and the insured offers no plausible grounds for excuse in the delay, the question of whether the delay in notifying the insurer of an accident or loss was unreasonable may be determined as a matter of law. * * * In such cases, a presumption of prejudice to the insurer arises and the claimant bears the burden of showing the absence of prejudice." (Citations omitted.) *Hamilton Mut. Ins. Co. v. Perry* (Feb. 26, 1993), Ottawa App. No. 92–OT–031, unreported, 1993 WL 49798.

This court has therefore acknowledged that while the question of whether notice to an insurance company of a claim is late is generally one for a jury, the question can be determined as a matter of law when facts are undisputed.

The trial court in this case considered the undisputed fact regarding when Champion learned of the existence of pollution problems at the two sites in question and determined that reasonable minds could come only to the conclusion that Champion's notice to the primary insurers of claims relating to the two sites was late. Following are the relevant undisputed facts.

Five unlined lagoons were constructed on the premises of the Pennsylvania factory sometime in the 1930s or 1940s. The lagoons were used to contain discharged pollutants from the factory. When Champion acquired the property in the 1950s it continued to use the lagoons for the same purpose. In December 1974, the Pennsylvania Department of Environmental Resources sent Champion a letter informing Champion that since no permit had been issued by that department for the use of the lagoons, the company was violating state law by using the lagoons. Champion and the Pennsylvania Department of Environmental Resources entered into an agreement whereby Champion abandoned the lagoons, backfilled them and covered them over. Three of the lagoons were seeded with grass; the other two lagoons were paved over to provide additional parking. Champion closed the factory in 1983.

In the fall of 1984, officials from the Pennsylvania Department of Environmental Resources became concerned about possible groundwater contamination at the site. Pennsylvania Department of Environmental Resources officials demanded that Champion conduct further investigation to determine the extent of the threat to the groundwater. Champion complied with the demand and hired outside consultants to conduct tests and to evaluate the situation. Champion installed monitoring wells on the property in December 1984 and January 1985. Samples taken from the wells showed that pollutants were seeping from the lagoons and were beginning to contaminate the groundwater.

In January 1985, a local newspaper ran a story reporting that a sale of the Pennsylvania property had "fallen through." The potential buyer was reported to have decided against the purchase because he feared cleanup costs "could run into millions of dollars" and because no agreement could be reached on terms for indemnifying the purchaser for any costs incurred. The attorney for Champion was quoted as saying that Champion would assume any cleanup costs for the site.

In April 1985, the outside consultants submitted a report to Champion. The consultants stated that some substances were present in amounts that exceeded standards for drinking water, but "only marginal contamination is evident." The consultants also stated: "The data from the analyses for water quality do not presently indicate a problem of significant magnitude or immediacy resulting from former operations at the plant." The final recommendation of the consultants read:

"On the basis of the survey described in this report, OHM would recommend only that monitoring be continued at the site from the list of parameters represented in the analyses of Appendix B on a quarterly basis for a period of not less than 1 year. After that period of time, the program could be pared back to semiannually, then to an annual basis, and finally discontinued if the water quality does not appear to be degrading or migrating off-site."

Champion conveyed this information to the Pennsylvania Department of Environmental Resources officials and began negotiating with the help of new consultants with the officials regarding an acceptable course of action. While the negotiations were still in progress, Champion received a letter from the United States Environmental Protection Agency ("EPA"), dated August 18, 1986. The letter stated that the EPA was "seeking information concerning a release, or the threat of a release, of hazardous substances into the environment" at the site in Pennsylvania. The new consultants helped Champion respond to the EPA request.

In January 1987, the EPA proposed that the Pennsylvania site be added to the national list of priorities for cleanup. Champion wrote to EPA officials in March 1987, to protest the proposed designation of the site as a priority. In April 1987, the EPA sent Champion a letter informing Champion that the EPA had determined that a release of contaminants had occurred or was likely to occur at the Pennsylvania site. As a result, cleanup of the site was required. The EPA notified Champion that it was identified as a potentially responsible party for cleanup costs and encouraged Champion "to conduct the Remedial Investigation/Feasibility Study."

In July 1987, Champion sold the Pennsylvania site to a purchaser for $800,000. As part of the sale agreement, Champion agreed to indemnify the purchaser for any cleanup costs. Because Champion had liability for the cleanup costs, negotiations between Champion and the EPA continued even after the sale of the property. In February 1988, Champion entered into a consent order with the EPA regarding the Pennsylvania site.

On April 20, 1988, Champion sent letters to notify some of its insurers that it was filing a claim with them for insurance coverage for the cleanup costs associated with the Pennsylvania site. One insurer was sent a notice-of-claim letter regarding the Pennsylvania site on May 2, 1988.

The following facts relate to the Ohio landfill claim. Champion contracted for several years with the company that operated the landfill to dispose of industrial wastes from Champion's facility in Toledo, Ohio. In March 1987, the EPA sent Champion a letter asking for information regarding what wastes Champion had sent to the landfill for disposal. In March 1988, the EPA notified Champion that it was identifying Champion as a potentially responsible party for cleanup costs at

the landfill. Shortly thereafter, Champion and forty-three other potentially responsible parties signed a consent agreement with the EPA. The final plan for cleanup at the landfill was submitted to the EPA in May 1990. The first notice Champion gave any of its insurers of the claims relating to the landfill was when it filed this lawsuit in the Lucas County Court of Common Pleas on September 27, 1991.

■ Based upon all of the surrounding circumstances in this case, we reject Champion's summarily presented statement that it did not provide late notice of its claims to the primary insurers in this case. Champion is essentially arguing that it had no obligation to notify its insurers of the contamination claims until Champion determined that the cost for cleaning the contamination was substantial. No provision has been shown to exist in any of the insurance contracts that would excuse reporting a claim until it becomes clear to the claimant that the costs associated with the claim are greater than the claimant wishes to bear on its own. Even accepting Champion's argument that it did not initially know the contamination was serious, reasonable minds could only conclude that the seriousness was apparent when Champion received notice from the EPA that Champion was identified as a party liable for cleanup costs and that the sites were assigned to a priority list. Applying the test established by the Supreme Court of Ohio and previously followed by this court in *Hamilton Mut. Ins. Co. v. Perry* (Feb. 26, 1993), Ottawa App. No. 92–OT–031, unreported, 1993 WL 49798, we therefore find that reasonable minds could not draw conflicting inferences from the undisputed evidence in this case and that Champion offers no plausible grounds for excuse in the delay of reporting its claims to the primary insurers. We affirm the trial court's ruling that the delays in notifying the primary insurers of the claims relating to the Pennsylvania site and the Ohio landfill were unreasonable as a matter of law.

Champion further argues that even if it did provide late notice to the primary insurers, the trial court incorrectly ruled that the primary insurers did not have to prove they were prejudiced by the late notice in order to avoid providing payment under the policies they issued to Champion. Champion alleges that the trial court's reasoning was flawed in several respects.

■ Champion first argues that the trial court erred when it stated that the Supreme Court of Ohio specifically rejected a requirement that prejudice to the insurer from the late notice of a claim must be proved before the insurer can successfully assert late notice as the basis for refusing to provide coverage pursuant to the insurance policy in *Ruby v. Midwestern Indemn. Co.*, 40 Ohio St.3d 159, 532 N.E.2d 730. Champion argues that in Ohio an insurer must prove that it was prejudiced by late notice of a claim before the insurer can avoid making payments to the insured pursuant to the terms of the insurance policy.

We have previously noted that the syllabus in *Ruby v. Midwestern Indemn. Co.* establishes the rule of law that prompt notice means notice within a reasonable time in light of all the circumstances in a case. The trial court did not dispute that rule of law as valid. However, in discussing *Ruby v. Midwestern Indemn. Co.* in its opinion and judgment entry, the trial court focused on whether an additional statement made in the text of the opinion in *Ruby v. Midwestern Indemn. Co.* is also valid law. The trial court stated:

"In *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 161 [532 N.E.2d 730, 731–732], the Ohio Supreme Court acknowledged the rebuttable-presumption-of-prejudice rule. By not embracing this rule in its syllabus, however, the *Ruby* court did not make this rule the law of Ohio. * * * Thus, this Court concludes that the Ohio Supreme Court and, more importantly, the law of Ohio controlling this Court do not require a showing of prejudice by the insurer before coverage is avoided."

For the following reasons, this court does not accept the trial court's analysis.

The statement that constitutes the syllabus in *Ruby v. Midwestern Indem. Co.* also appears in the text of the opinion written by the Supreme Court of Ohio. In the text of the opinion, the same statement that constitutes the rule of law in the syllabus is followed by the following statement: "Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary." *Id.* at 161, 532 N.E.2d at 732.

■ Admittedly, when a statement in the opinion conflicts with the rule of law established in the syllabus, the syllabus governs. *Akers v. Serv–A–Portion, Inc.* (1987), 31 Ohio St.3d 78, 79, 31 OBR 190, 191–192, 508 N.E.2d 964, 965, fn. 1. However, the second statement of *Ruby v. Midwestern Indemn. Co.* that appears only in the text of the opinion is not in conflict with the statement in the syllabus: it is only a further explanation made by the court. Accordingly, the rule that any statement in the opinion that is in conflict with the rule of law announced in the syllabus must be disregarded does not apply.

Since the statement in the text is made by the Supreme Court of Ohio, this court and the trial court may not lightly dismiss the statement contained only in the opinion. The Supreme Court of Ohio has itself stated: "[A]ny syllabus holding announced by the Supreme Court must be considered in connection with the underlying opinion and in light of the questions, facts and statutes at issue in the case." *Egan v. Natl. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 178, 25 OBR 243, 245, 495 N.E.2d 904, 906. We therefore find unpersuasive the trial court's blanket conclusion that the Supreme Court of Ohio does not require a showing of prejudice for an insurer to avoid coverage to an insured.

■ However, we do not adopt Champion's position that the insurer has the burden of proving that it was prejudiced by the late notice. This court has previously cited the statement from the text of the *Ruby v. Midwestern Indem. Co.* opinion to support the conclusion that when an insured gives an insurer late notice of a claim, as a matter of law, a presumption of prejudice to the insurer arises that can be defeated only by proof from the insured that no prejudice occurred. *Hamilton Mut. Ins. Co. v. Perry* (Feb. 26, 1993), Ottawa App. No. 92–OT–031, unreported, 1993 WL 49798. Accordingly, Champion, the insured, has the burden to prove that the insurers were not prejudiced by the late notice of the claims.

■ Champion contends that it met its burden of proof by presenting sufficient evidence to create a question of fact regarding the issue of whether the insurers were prejudiced by the late notice. Champion points to deposition testimony from representatives of the insurers and argues that the testimony shows that the insurers would not have conducted themselves any differently even if Champion did provide more timely notice.

For instance, the representative for the parent company of Glens Falls and of Fidelity and Casualty of New York admitted that his company did not establish a claim file for or conduct an investigation of either of Champion's claims in this case. Champion argues that this admission shows that the claims would not have been paid even if the notice was timely. However, when the rest of the deponent's testimony is considered, it becomes clear that Champion has not shown that even if timely notice had been received, the insurers in question would not pay the claims. He testified that it "is not a rarity" for his company to determine that a pollution claim is covered and to pay the claim. He also testified that his company has paid costs for remediation experts who work for the company's insured, and that the company has hired its own outside consultants without an agreement with its insured. When asked how his company was prejudiced by late notice of Champion's claims, he responded that his company was not able to "speak with the witnesses, to conduct various investigations, to perhaps negotiate on a settlement either with the complaining party or with the policyholder itself. * * * By the time notice was given, the investigations were done, the negotiations had occurred, the consent order was in place and [the parent company for Glens Falls and Fidelity and Casualty of New York] was essentially asked to now pay the clean-up."

A claims adjuster for Lumbermen's Mutual Casualty Company testified that to date, his company has not paid a pollution contamination claim because, for different reasons, each of the claims presented has fallen outside the terms of the insurance contract issued by his company. However, he testified that the company does have a history of sending claims representatives to sites to

investigate pollution contamination claims and that the claim would be paid if it was covered by the terms of the insurance contract. Like the representative for Glens Falls and Fidelity and Casualty of New York, the claims adjuster for Lumbermen's Mutual Casualty Company testified that the prejudice suffered by his company by the late notice from Champion was the inability to be involved in the investigation of the situation and in the negotiations regarding how the problem would be remedied. He stressed that the policy issued by his company is not a reimbursement contract.

The representative for Fireman's Fund testified that her company has never instructed an insured not to negotiate with the EPA or to hire consultants or experts. When she was asked what prejudice resulted from Champion's late notice of its claims, she responded: "[W]e don't know what prejudice we may have suffered because we don't know what investigation or facts may have been destroyed or unavailable to us now that wasn't available prior to that time." Champion dismisses her statements and similar statements made by the representatives of the other insurers that the late notice precluded the insurers from making timely investigations. Champion argues that because the insurers cannot show how they were prejudiced, a question of fact is created regarding whether the insurers were prejudiced by the late notice.

Champion's arguments are misplaced. Champion, not the insurers, has the burden of rebutting the presumption that prejudice occurred; Champion has the burden of showing that no prejudice existed.

As the representatives for the insurers aptly explained, they were not in a position to discern what information may now be unavailable that they could have discovered with timely notice, or what witnesses may now be unavailable; this is the reason Ohio law recognizes a presumption of prejudice. See *Thomas v. State Farm Mut. Auto Ins. Co.* (Apr. 17, 1991), Summit App. No. 14888, unreported, 1991 WL 60698 (presumed prejudice from lost opportunity to investigate and negotiate not rebutted); *Hnanicek v. Am. Select Ins. Co.* (Feb. 9, 1995), Cuyahoga App. No. 66627, unreported, 1995 WL 57191 (insurer entitled to opportunity to promptly investigate and to set reserve amounts). Champion, the insured, is in the best position to show that information has not been lost, or that witnesses are still available. Champion has not presented any evidence to demonstrate that the insurers could still discover the same information that they would have learned with a timely notice.[2] Accordingly, the trial court did not err when it

2. This court previously reversed a summary judgment because the insured did present evidence that created a material question of fact regarding whether the insurer was prejudiced by late notice. *Hamilton Mut. Ins. Co. v. Perry* (Feb. 26, 1993), Ottawa App. No. 92-OT-031, unreported, 1993 WL 49798. However, in that case the insured presented affidavits, depositions and interrogatories that showed that all material witnesses were still available and that

ruled that no genuine issue of fact exists in this case regarding whether the insurers were prejudiced by the late notice from Champion. Champion's first, second, and third assignments of error are not well taken. On the issue of whether the primary insurers are entitled to summary judgment due to Champion's late notice of its claims, there is no genuine issue as to any material fact; when construing the evidence in a light most favorable to Champion, reasonable minds can conclude only that the primary insurers are entitled to summary judgment as a matter of law. The judgment of the Lucas County Court of Common Pleas granting summary judgment to the primary insurers on this basis is affirmed.

■ The arguments presented relating to Champion's fourth assignment of error focus on the terms in the insurers' policies that preclude coverage of a claim if Champion makes a voluntary payment or settlement of the claim without prior approval from the insurers. The trial court ruled that Champion violated those terms when it signed the consent order with the EPA without prior notice to and approval from the insurers and granted summary judgment to the insurers. Champion argues that the trial court's ruling was in error.

Champion argues that it did not make any voluntary payment or settlement; rather, it was compelled to enter into consent agreements with the EPA, since if it did not sign the consent orders the EPA would have performed the cleanup itself and then required Champion to pay the cost of the cleanup. The insurers respond that Champion did act voluntarily when it signed the consent orders because Champion had a third alternative it chose not to exercise: Champion could have notified the insurers of the claims and allowed the insurers to negotiate with the EPA or be granted permission from the insurers to negotiate with the EPA. We agree with the insurers. The trial court did not err when it ruled that Champion acted voluntarily when it chose to sign the consent agreements with the EPA.

Champion further argues that even if it did make a voluntary payment or settlement it is still entitled to coverage from the insurers. Champion contends that the clauses in the insurance contracts prohibiting voluntary payments or settlements are not applicable in this case because the insurers planned to deny coverage of the claims anyway, and were not prejudiced by the settlement or payments. The insurers respond that the clauses are applicable in this case because the record does not definitively show that they planned to deny coverage in any event and because the issue of whether prejudice occurred is irrelevant.

---

the site of the accident was materially unchanged. The insurer could therefore conduct an investigation that would render the same information an earlier investigation would have revealed. *Id.*

The Twelfth District Court of Appeals considered a similar issue and ruled that a violation of the clause prohibiting a voluntary payment or settlement was a material breach of the insurance contract that absolved the insurer of any responsibility to provide coverage even if there was no showing that the insurer suffered prejudice. *Servpro–Domesticare of Anderson Hills, Inc. v. Grange Mut. Cas. Co.* (Sept. 23, 1985), Clermont App. No. CA84–10–070, unreported, 1985 WL 7739. The *Servpro–Domesticare* court noted:

"Aside from the obvious purpose of preventing collusion, a provision prohibiting the insured from voluntarily assuming any liability, settling claims or incurring expenses except with the consent of the insurer, guarantees the insurer complete control and direction of the compromise and settlement of claims."

We agree with the reasoning of the Twelfth District Court of Appeals and hold that in Ohio there is no burden to show that a voluntary payment or settlement made by the insured in violation of a term in the insurance contract prejudiced the insurer before a ruling can be made that a material breach of the contract occurred which relieves the insurer of the obligation to make payment. See *id.*; see, also, *Lanahan v. Nationwide Mut. Ins. Co.* (Nov. 17, 1995), Lucas App. No. L–95–032, unreported, 1995 WL 680032. Accordingly, Champion's fourth assignment of error is not well taken.

On the issue of whether Champion violated the terms in the insurance contracts prohibiting Champion from making a voluntary payment or settlement there is no genuine issue as to any material fact; when construing the evidence in a light most strongly in favor of Champion, reasonable minds can conclude only that the excess insurer and the primary insurers are entitled to summary judgment as a matter of law. The judgment of the Lucas County Court of Common Pleas granting summary judgment to the excess insurer and to the primary insurers on this basis is affirmed.

Because our rulings on the four assignments of error presented by Champion have resulted in affirming summary judgments granted to all of the insurers, we find that the errors raised on cross-appeal are moot. We therefore decline to address the assignments of error raised on cross-appeal.

Champion is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

MELVIN L. RESNICK, P.J., and ABOOD, J., concur.