In the Matter of the CELOTEX CORPORATION, Debtor(s).

THE CELOTEX CORPORATION, et al., Plaintiff,

v.

AIU INSURANCE COMPANY, et al., Defendants.

Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1. Adversary No. 91–40.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 18, 1998.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Debtors.

Charles P. Schropp, William R. Daniel, Schropp, Buell & Elligett, P.A., Tampa, FL, Deborah A. Swindells, Karen L. Bush, Nicholas J. Zoogman, Anderson, Kill, Olick & Oshinsky, Washington, DC, Stephen A. Madva, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Bruce Bishop, Willcox & Savage, Norfolk, VA, for Plaintiffs.

George N. Wood, Tampa, FL, Vice President and General Counsel for Celotex Corp.

Sara Kistler, Asst. U.S. Trustee, Tampa, FL.

John W. Kozyak, Kozyak, Tropin, Throckmorton & Humphreys, P.A., Miami, FL, for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Clearwater, FL, for Unsecured Trade Creditors Committee.

William Knight Zewadski, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman, Miller, Schwartz and Cohn, Tampa, FL, for Asbestos Health Claimants Committee.

Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Asbestos Health Claimants Committee.

Daniel C. Sauls, John Flyger, Steptoe & Johnson Company, Washington, DC, for Highlands Ins. Co. and Old Republic Ins. Co.

Robert J. Bates, Jr., Maryann C. Hayes, Stanley V. Figura, Bates, Meckler, Bugler & Tilson, Chicago, IL, for Eric Reinsurance Co.

Deborah M. Paris, Paris & Associates, Tampa, FL, for Certain Underwriters at Lloyd's of London (Plaisted).

John A. Yanchunis, Blasingame, Forizs & Smiljanich, St. Petersburg, FL, for Transportation Ins. Co., Continental Casualty Co., Columbia Casualty Co., Eric Reinsurance Co. and Zurich American Ins. Co.

David C. McLauchlan, Andrew Kochanowksi, Lord, Bissell & Brook, Chicago, IL, for Certain Underwriters at Lloyds of London.

Thomas B. Keegan, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Employers Mutual Casualty Co.

William Clearly, Mendes & Mount, New York City, for Barrett and London Market Companies.

Gregory J. Willis, Bart Billbrough, Walton, Lantaff, Schroeder & Carson, Miami, FL, for Florida Ins. Guaranty Assn., Inc.

W. Gray Dunlap, Jr., Tampa, FL, for Hartford Accident and Indemnity Co., First State Ins. Co. and Twin City Fire Ins. Co.

Rolph Gilbertson, Zeele & Larson, Minneapolis, MN, for Employers Ins. of Wausau.

Margaret Jones, Grippo & Eldon, Chicago, IL, for American Ins. Co. and National Surety Corp.

Thomas B. Mimms, Jr., MacFarlane Ferguson, Tampa, FL, for American Home Assurance Co., AIU Ins. Co., Highlands Ins. Co., Old Republic Ins. Co., Granite State Ins. Co., National Union Fire Ins. Co. of Pittsburgh, PA., Employers Mutual Casualty Co., American Ins. Co., National Surety Co. and St. Paul Surplus Lines Ins. Co.

Christine A. Nykiel, Jackson & Cambell, Washington, DC, for American Home Assurance Co., AIU Ins. Co., Granite State Ins. Co., Lexington Ins. Co. and National Union Fire Ins. Co. of Pittsburgh, PA.

Elizabeth G. Repaal, Harris, Barrett, Mann & Dew, Tampa, FL, for Northbrook, as successor in interest to Allstate Ins. Co.

Mary A. Lau, Lau, Lane, Pieper, Conley & McCreadie P.A., Tampa, FL, for Employers Ins. Co. of Wausau.

Elizabeth B. Sandza, Cynthia T. Andreason, LeBoeuf, Lamb, Greene & Macrea, Washington, DC, for Hudson Ins. Co. and Gibraltar Casualty Co.

William S. Daskam, IV, Butler, Burnette & Pappas, Tampa, FL, for Continental Ins. Co.

Rick Dalan, Clearwater, FL, for Royal Indemnity Co.

Jeffrey A. Aman, Aman & Lins, Tampa, FL, for Insurance Company of North America and California Union Ins. Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO LATE NOTICE TO AMERICAN INSURANCE COMPANY (PHASE IV)

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on to be heard upon a final evidentiary hearing concerning whether the Debtor gave reasonable notice of asbestos property damage claims to American Insurance Company (American). The Court previously ruled on the question of Debtor's reasonable notice to the vast majority of its excess insurance carriers in Phase IV of this adversary proceeding. *Celotex Corp. v. AIU Insurance Co.*, 216 B.R. 867 (Bankr.M.D.Fla.1997)(Order on Defendants' Rule 52(c) Motions for Judgment Regarding Bodily Injury and Property Damage Late Notice) ("Excess Coverage Opinion"). For reasons which will become apparent, the issue of reasonable notice by Celotex to American was separately tried. By reference, this Court now adopts its findings of facts set forth in the Excess Coverage Opinion unless specifically shown otherwise herein.

In this penultimate opinion dealing with Celotex's insurance coverage, Ohio law has been designated by the parties as the choice of law. A further distinguishing characteristic from the previous insurance coverage litigation is the absence of the Debtor, Carey Canada, Inc., as a participant in this affray. There are several other distinctions from the Phase IV excess coverage litigation; namely, American provided primary coverage, albeit to Dana Corporation (Dana), from April 1, 1967, to February 18, 1969, for products manufactured by a subsidiary, Smith & Kanzler Corporation (Smith & Kanzler), and Celotex asserts rights to coverage under the American policies as a purchaser of and successor in interest to Smith & Kanzler from Dana. Thus, the notice issue herein only relates to the asbestos property damage claims (Phase I) [1] against Smith & Kanzler products and to the insurance coverage provided by American to Dana between April 1967 and February 1969.

## OHIO LAW OF NOTICE

While the parties agree the choice of law as to reasonable notice to American is Ohio law, the Court comes to such jurisprudence with trepidation. It is difficult for any trial court to assemble all the nuances and procedures of any state's law in which it has no intimate knowledge. It may be more so for bankruptcy courts, especially when the state law, such as Ohio, has specific jurisprudence as to how its judicial opinions are reviewed. "The syllabus of a Supreme Court opinion states the law of the case. *State v. Wilson* (1979) 58 Ohio St.2d 52, 60, 388 N.E.2d 745. Any other words in an Ohio Supreme Court opinion are dicta, *id.*, and not part of the Court's decision. *Haas v. State* (1921) 103 Ohio St. 1, 7–8, 132 N.E. 158. *Id.* at syllabus." *Ormet Primary Aluminum Corp. v. Employers Insurance of Warsau, a Mutual Company,* Case No. 95–103, Court of Common Pleas, Monroe County, Ohio, September 17, 1997 (as reported in **Mealy's Litigation Reporter,** Vol. 11, No. 44, p. 12, September 23, 1997). These findings of facts and con-

---

1. *Celotex Corp. v. AIU Insurance, et al.,* 196 B.R. 973 (Bankr.M.D.Fla.1996).

clusions of law are as specific as possible regarding Ohio law as stated in the syllabi of various court decisions. From time to time, however, this Court has indulged in dicta to ascertain the full weight of any pronouncement in a syllabus.

■ Normally, the insured will be the party giving any notice to the insurer because it has the duty to notify the insurance company of the occurrence or claim. Nonetheless, it is quite clear the Debtor Celotex would have, under Ohio law, a sufficient interest in the American policy coverage to be able to provide reasonable notice of Smith & Kanzler claims to American. *See generally, Hunsicker v. Buckeye Union Casualty Co.,* 95 Ohio App. 241, 118 N.E.2d 922 (1953); *Kincaid v. Smith,* 167 F.Supp. 195 (N.D.Ohio 1958). Here, where Celotex is the notifying party, like an insured, it must comply with all terms and conditions of the insurance policy. *See Spears v. Ritchey,* 108 Ohio App. 358, 161 N.E.2d 516 (1958). The American policies material to the question of notice contain paragraphs 10 and 11 which set forth the conditions associated with notice.[2] Paragraphs 10 and 11 state:

■ NOTICE OF ACCIDENT [OCCURRENCE].

When an accident [occurrence] occurs, written notice shall be given by and on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtain information respecting the time, place, and circumstances of the accident [occurrence], the names and addresses of the injured and of available witnesses.

■ NOTICE OF CLAIM OR SUIT.

If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative.

■ Under Ohio law, the legal standard for providing notice to an insurer is premised on the insured's duty to notify the primary carrier of an occurrence or accident; here, as it relates to the asbestos property damage claims. *West American Ins. Co. v. Hardin,* 59 Ohio App.3d 71, 571 N.E.2d 449 (1989). Ohio courts have consistently found such notice is required by the policy as a condition precedent to insurance coverage. *E.g., Kornhauser v. National Sur. Co.,* 114 Ohio St. 24, 150 N.E. 921 (1926); *Heller v. Standard Accident Insurance Co.,* 118 Ohio St. 237, 160 N.E. 707 (1928); *Krasny v. Metropolitan Life Ins. Co.,* 143 Ohio St. 284, 54 N.E.2d 952 (1944). Like Illinois law on Debtor's notice to the excess carriers, which was construed in this Court's Excess Coverage Opinion, Ohio law makes the notice requirement the sum and substance of the insurance contract, and the Debtor's failure to provide such timely notice precludes coverage. *American Employers Ins. Co. v. Metro Regional Transit Auth.,* 12 F.3d 591 (6th Cir.1993). The notice requirement is one of reasonableness, *Travelers' Ins. Co. v.. Myers,* 62 Ohio St. 529, 57 N.E. 458 (1900); *Ruby, supra; Motorists Mut. Ins. Co. v. Speck,* 59 Ohio App.2d 224, 393 N.E.2d 500 (1977); *Patrick, supra,* Note 2, and the Debtor, by accepting the insured's (Dana) duty of providing notice, has the burden of establishing its due diligence in giving notice in order that it be characterized as reasonable. *Heller v. Standard Acc. Ins. Co.,* 118 Ohio St. 237, 160 N.E. 707 (1928); *Patrick, supra.*

Of course, the importance of notice to the primary insurance carrier is expansive, as there are different duties between it and the excess carriers. Mainly, the duty to defend and investigate the occurrence or claim, which is placed upon the primary carrier, is distinct from that of the umbrella or excess carriers. The excess carriers normally do not expect they will receive notice of an

---

**2.** Ohio courts have generally determined that where policies require notice be either "immediate" or "as soon as practicable," such notice is interpreted to require the insured to give "notice within a reasonable period of time." *Patrick v. Auto–Owners Ins. Co.,* 5 Ohio App.3d 118, 449

N.E.2d 790 (1982); *Ruby v. Midwestern Indem. Co.,* 40 Ohio St.3d 159, 532 N.E.2d 730 (1988); *Owens–Corning Fiberglas Corp. v. Am. Centennial Ins. Co.,* 74 Ohio Misc.2d 183, 660 N.E.2d 770 (1995).

occurrence unless the excess coverage will, in fact, be affected by such occurrence, whereas the primary carrier will always face immediate risk. *See Hardin, supra.*

■ In determining whether the Debtor exercised due diligence in giving notice to American, which would satisfy the reasonableness requirement, Ohio law emphasizes the facts and circumstances surrounding the notice process. *See Employer's Liability Assur. Corp. v. Roehm,* 99 Ohio St. 343, 124 N.E. 223, *aff'd* 99 Ohio St. 350, 124 N.E. 225 (1919); *American Employers, supra.* This Court finds, under Ohio law, that a trier of facts, examining all circumstances related to the notice by the Debtor to American, would consider the same indicators adopted by this Court in its Excess Coverage Opinion. *Celotex, supra,* 216 B.R. at 873. Therefore, as part of these findings of facts and conclusions of law, the indicators expressed in its Excess Coverage Opinion are incorporated by reference, one of the foremost indicators being the sophistication of the insured, herein, the Debtor Celotex, as the party accepting the duty to give notice. The Court previously found Celotex, during the appropriate time period was one of the most sophisticated insureds in the history of insurance law.

■ A court, in determining due diligence as regards notice, should consider the timing of the notice in relation to the status of other ongoing claims or litigation. Another indicator would be the length of time between the insured's knowledge of the occurrence and the notice given—more specifically, whether the notice has taken three months, eight months, or thirty-two months.[3] Additionally, the Court recognizes that due diligence by Celotex in handling the claims, and its knowledge of how those claims might impact rights under the policies, are also parts of the timing contingency. Most assuredly, timing in this matter becomes the focal point in determining the reasonableness of notice. Ultimately, though, the reason for any delay in giving notice, and the presence of other insurance coverage for similar occurrences, constitute other indicators to be considered by this Court.

■ Lastly, under both Illinois and Ohio law, one of the prevailing questions associated with the issue of reasonable notice is the "prejudice to the insurer." In *American Employers, supra,* Senior Circuit Judge Wellford commented upon what appears to be the two schools of thought regarding prejudice under Ohio law:

It remains unclear to me whether the rebuttable presumption of prejudice shifts the ultimate burden of showing prejudice from the insurer to the insured in Ohio. The controversy is fueled by an apparent ambiguity in *Hardin.* After the holding above-quoted, that the insured must prove prejudice, the court stated that prejudice to the insurer is presumed from unreasonable delay in giving the required notice of loss under the policy, and the burden rests upon the claimant to show absence of prejudice (citations omitted).

12 F.3d at 598.

The Court finds the evidence adduced in the Phase IV trial as to the excess carriers, together with the evidence in this trial concerning the Debtor's delay in giving notice, the paucity of specific notices of claims, the amount of claims, the extent of litigation concerning those claims and insurance coverage, and the disputes with Dana, are sufficient to establish prejudice to American and to require the Debtor, under either school of thought, to demonstrate an absence of prejudice. Such evidence has not been adduced. *See Ruby, supra; Owens–Corning, supra; Champion Spark Plug, supra.*

## FACTS ASSOCIATED WITH NOTICE

■ This Court also incorporates by reference the germane portion of its statement of chronological events associated with the han-

---

3. A substantial number of Ohio opinions focus on what amount of time delay is considered unreasonable. *E.g., Eureka Fire & Marine Ins. Co. v. Baldwin,* 62 Ohio St. 368, 57 N.E. 57 (1900)(eight months); *Travelers' Ins. Co. v. Myers,* 62 Ohio St. 529, 57 N.E. 458 (1900)(nine months); *Kornhauser v. National Sur. Co.,* 114 Ohio St. 24, 150 N.E. 921 (1926)(six months); *Heller, supra* (five months); *Champion Spark Plug Co. v. Fidelity & Cas. Co. of New York,* 116 Ohio App.3d 258, 687 N.E.2d 785 (1996)(one and one-half years); *Helman v. Hartford Fire Ins. Co.,* 105 Ohio App.3d 617, 664 N.E.2d 991 (1995)(two year delay).

dling of asbestos property damage claims by Debtor from the Excess Coverage Opinion. In addition, the Court sets forth additional facts specifically associated with the relationship between Celotex and American as regards the asbestos building claims. As noted earlier in the Excess Coverage Opinion, this Court found the filing of the *Evadale* lawsuit made Celotex, for the first time, a defendant in an asbestos property damage claim.[4] That asbestos property damage lawsuit began in April 1981 and at approximately that time, Celotex staff and attorneys were very concerned with what *Evadale* and one earlier lawsuit [5] might portend to additional claims from the already numerous asbestos bodily injury claims filed against Celotex and other asbestos manufacturers.

Since 1972, Celotex had been investigating asbestos bodily injury claims, identifying its insurance policies, and determining its related insurance coverage. One year after the *Evadale* lawsuit was filed, further activities transpired concerning the filing of potential asbestos property damage claims. However, not until the summer of 1982 did Celotex locate the original stock purchase agreement between Dana and Celotex's predecessor as to the purchase of Smith & Kanzler, which, admittedly, had been in its file since 1972. This agreement contained specific provisions including that, as of 1969, insurance for Smith & Kanzler was being canceled by Dana. Such a provision would lead one to believe there had been insurance coverage. Thereafter, Celotex made demands upon Dana for indemnification under specific provisions in the stock purchase agreement.[6]

Notwithstanding the existence of the Smith & Kanzler product, the liability which might arise from the Smith & Kanzler prod-uct, the various aspects of indemnification, and the insurance cancellation provision in the stock purchase agreement, Celotex appears to have made no attempt to acquire information concerning any insurance coverage for the Smith & Kanzler product from Dana or from Debtor's long-standing insurance brokers, Rollins, Burdick and Hunter. Equally as interesting, from 1982 through 1985, Celotex became involved in various lawsuits with Dana in California and in Florida and, ultimately, Celotex was brought into an ongoing Ohio lawsuit between Dana, Fireman's Fund, and American concerning various aspects of the stock purchase agreement and, most specifically, the indemnification by Dana to Celotex.

The evidence suggests it was not until the first half of 1985, when Celotex brought the California declaratory judgment action against Dana, that American had some idea Celotex was seeking insurance coverage for the Smith & Kanzler claims. It appears further the only notices that were given were in 1987 when two claims, the Chase Manhattan claim and the New York Plaza claim, were directly filed with American by Celotex. The Debtor's contention it did not acquire the American policy until the Ohio litigation began provides no basis for the lack of notice under the criteria discussed herein.

Considering the indicators discussed earlier, the extensive evidence associated with the Debtor's knowledge of the asbestos property damage claims and its excess insurance coverage, as noted in the Excess Coverage Opinion, and the facts presented in this subphase, the Court finds the Debtor did not give reasonable notice to American of the asbestos property damage claims. The Debtor, as found in Phase IV, in April 1983,

---

4. *Evadale Independent School District v. United States Gypsum, et al*, Civ. No. B–81–293–CA (E.D.Tex. Apr. 27, 1981).

5. *Cinnaminson, New Jersey Board of Education v. National Gypsum Co.*, No. L–49430–79 (N.J.Super. Ct., Law Div., May 19, 1980).

6. This Court makes no determination as to whether Dana ever gave notice to American as regards any of the Smith & Kanzler asbestos property damage claims, nor does the Court make any determination as to whether or not there is indemnification between Dana and Celotex as to Smith & Kanzler claims. There is an ongoing dispute between Dana and Celotex over indemnification in the stock purchase agreement. *Dana Corp. v. Fireman's Fund Ins. Co.*, 865 F.2d 257 (6th Cir.1988); *Dana Corp. v. Fireman's Fund Ins. Co.*, 1997 WL 135591 (N.D.Ohio Feb. 10, 1997); *Dana Corp. v. Fireman's Fund Ins. Co.*, 1997 WL 135595 (N.D.Ohio Mar. 11, 1997); *In re Celotex Corp.*, 204 B.R. 586 (Bankr.M.D.Fla. 1996). The Sixth Circuit's opinion provides a chronology of other litigation between the parties relating to these matters.

knew asbestos property damage claims would impact on all excess insurance coverage post–1978. *At that time, the Debtor knew or should have known there was primary insurance coverage for Smith & Kanzler claims prior to 1969.* Given the significant sophistication of the Debtor as to insurance coverage matters, the Debtor failed to use due diligence in determining the scope and extent of any primary insurance coverage provided to Dana by American.

Notwithstanding the various Dana-related lawsuits as juxtaposed against the other issues related to asbestos property damage claims, Debtor, at a minimum, did not give notice to American until mid–1985. Such delay of at least two years was unreasonable considering the facts and circumstances associated with the asbestos property damage claims and the Debtor's relationship with Dana. It may be a hard task for a third party, on behalf of an insured, to meet all the duties imposed on an insured and give notice under the terms and conditions of the policy. This Court, however, under the facts elicited, believes the Debtor had the ability to comply with the requirements of the American policy, as it knew in 1982 of the existence of the stock purchase agreement and had the ability to acquire from Dana the name of the insurance carrier covering Smith & Kanzler products. This Court finds it was reasonably possible for Celotex to give timely notice to American in April, 1983. *Employers Liability, supra; Krasny, supra.*

Considering these factors, the Court finds the Debtor's delay in giving notice was prejudicial to the specific rights of American, as a primary carrier, to investigate the vast number of asbestos property damage claims and to seek to defend these claims.[7] It is interesting to note Celotex's actions regarding its lack of reasonable notice to its excess carriers are in accord with its activities herein in failing to determine which carrier covered Smith & Kanzler products and to provide that carrier with reasonable notice.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Celotex failed to give reasonable notice to American Insurance Company as provided in its policies issued to Dana Corporation. A separate Final Judgment shall be entered in accordance with the foregoing.

---

7. This Court finds that the evidence does not establish any waiver by American of information or notice on their behalf which would preclude

Debtor from giving timely notice. *Liberty Sav. Bank, F.S.B. v. Lawyers Title Ins. Corp.,* 1990 WL 235470 (Ohio App. 12 Dist.1990).