IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE



**FILED**

**December 21, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FOR PUBLICATION

| | | |
|---|---|---|
| DAVID ALCAZAR, | ) | **Filed:** December 21,1998 |
| | ) | |
| Plaintiff-Appellant, | ) | BRADLEY COUNTY |
| | ) | |
| v. | ) | Hon. Earle G. Murphy |
| | ) | Judge |
| CHRISTOPHER HAYES, | ) | |
| | ) | |
| Defendant, | ) | Supreme Court |
| | ) | No. 03-S01-9804-CV-00035 |
| | ) | |
| and | ) | |
| | ) | |
| GOVERNMENT EMPLOYEES | ) | |
| INSURANCE COMPANY, | ) | |
| Defendant-Appellee, | ) | |
| Uninsured Motorist Carrier | ) | |

FOR APPELLANT:

Jimmy W. Bilbo
Logan, Thompson, Miller, Bilbo,
  Thompson & Fisher, P.C.
Cleveland, TN

FOR APPELLEE:

Donald W. Strickland
Steven W. Grant
Grant, Konvalinka & Harrison, P.C.
Chattanooga, TN

FOR AMICUS CURIAE

Tennessee Defense Lawyers Assoc.
Brian H. Trammell
Knoxville, TN

National Association of Independent
Insurers
G. Brian Jackson
Amanda Haynes Young
Nashville, TN

Tennessee Trial Lawyers Assoc.
Thomas Stratton Scott, Jr.
Knoxville, TN

# O P I N I O N

TRIAL COURT AND
COURT OF APPEALS REVERSED;
CASE REMANDED TO TRIAL COURT

DROWOTA, J.

**OPINION**

This suit arose from a motor vehicle accident in which plaintiff David Alcazar was injured. Alcazar appeals from the Court of Appeal's affirmance of the trial court's award of summary judgment to defendant Government Employees Insurance Company ("GEICO"). The sole issue for our determination is whether an insurance policy is automatically forfeited when the insured does not comply with the policy's notice provision, regardless of whether the insurer has been prejudiced by the delay. For the reasons stated hereinafter, we reverse the judgments of the lower courts and remand the case to the trial court.

## I. FACTS & PROCEDURAL HISTORY

On November 3, 1995, plaintiff Alcazar and defendant Christopher Hayes were working in chicken houses on a farm in Bradley County owned by Alcazar's mother. Alcazar asked Hayes for a ride to pick up Alcazar's truck. Hayes agreed under the condition that Alcazar ride on the trunk of the car, since he was extremely dirty. Alcazar acquiesced and during the drive Alcazar was flung from the trunk, striking his head on the paved roadway. Alcazar, who was eighteen years old and living with his mother, was hospitalized for a couple of days and then returned home. Alcazar alleges that he suffers injuries as a result of the accident, including permanent brain damage.

At the time of the accident, Alcazar was covered under a "Family Automobile Insurance Policy" issued by GEICO to Alcazar's mother, Deborah Wheatley. An "uninsured motorist coverage" provision in this policy includes the following clauses:

1. Notice

As soon as possible after an accident notice must be given us or our authorized agent stating:

(a) the identity of the *insured*;

(b) the time, place and details of the accident; and

(c) the names and addresses of the injured, and of any witnesses.

\* \* \*

3. Action Against Us

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

(Italics in original). It is undisputed that Alcazar qualified as an "insured" under the policy.

Although the exact date that GEICO received notice of the accident is somewhat uncertain, it is clear that notice was not provided until approximately one year after the accident. At this time, Alcazar filed a Complaint seeking damages for his personal injuries suffered as a result of the accident. Hayes[1] was listed as a defendant and GEICO was added as a party defendant in accordance with Tennessee's uninsured motorist statute, Tenn. Code Ann. §§ 56-7-1201 et seq. (Repl. 1994 & Supp. 1998). Alcazar and Wheatley testified that notice was not provided to GEICO earlier because they mistakenly assumed that the policy did not apply since Alcazar was not the driver of the automobile involved in the accident. Wheatley also testified that she did not intend to make a claim on the insurance policy until nearly a year after the accident, because she did not learn until this time the extent of Alcazar's brain injury.

GEICO filed a motion for summary judgment, asserting that under the terms of the policy, they could not be sued since the notice provision was breached. Alcazar insisted that notice was provided "as soon as possible" and, alternatively, argued that the policy could not be forfeited since there was no evidence that GEICO was prejudiced by the delay. The trial court granted summary judgment to GEICO and Alcazar appealed. The Court of Appeals affirmed, finding that GEICO could not be listed as a party defendant since Alcazar breached the notice provision. Although finding plaintiff's "no prejudice" argument "appealing," the Court of Appeals, citing

---

[1] Hayes is not a party to this appeal.

-3-

case law precedent in this State, held that prejudice to the insurer is immaterial to the issue, stating: "It is not our prerogative to overrule controlling Supreme Court precedent."

## II. ANALYSIS

The sole issue for our review concerns whether an insured, who fails to comply with the notice provision of his or her insurance policy, may nevertheless enforce the policy in the event that the insurer has not been prejudiced by the delay.[2]  While conducting this review, we must reexamine established precedent in this State holding that prejudice to the insurer is irrelevant to the inquiry.

### A. Standard of Review

Summary judgment is appropriate if the movant, GEICO, demonstrates that no genuine issues of material fact exist and that GEICO is entitled to a judgment as a matter of law.  Tenn. R. Civ. P. 56.03.  We must take the strongest view of the evidence in favor of the nonmoving party, Alcazar, allowing all reasonable inferences in favor of Alcazar and discarding all countervailing evidence.  Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998) (citing Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)).  Since our review concerns only questions of law, the trial court's judgment is not presumed correct, and our review is *de novo* on the record before this Court.  Warren v. Estate of Kirk, 954 S.W.2d 722, 723 (Tenn. 1997); Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).

### B. Construction of Insurance Contracts

In general, courts should construe insurance contracts in the same manner as any other contract.  McKimm v. Bell, 790 S.W.2d 526, 527 (Tenn. 1990); Draper v.

---

[2] For the reasons articulated by the Court of Appeals, it is clear that there is no genuine issue of material fact that Alcazar did not provide notice "as soon as possible" in accordance with the policy. First of all, the plaintiff's ignorance that he was not included within the coverage is not a legal justification.  Secondly, the record does not contain any evidence suggesting that his brain injury prohibited him from complying with the notice provision.

Great Am. Ins. Co., 458 S.W.2d 428, 432 (Tenn. 1970). In Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578 (Tenn. 1975), we stated:

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. It is the Court's duty to enforce contracts according to their plain terms. Further, the language used must be taken and understood in its plain, ordinary and popular sense. The courts, of course, are precluded from creating a new contract for the parties.

Id. at 580 (internal citations omitted); see also Galyon v. First Tenn. Bank, 803 S.W.2d 218, 219 (Tenn. 1991); Whaley v. Underwood, 922 S.W.2d 110, 112 (Tenn. App. 1995).


Tennessee, like most states, recognizes the validity of conditions precedent for insurance coverage, including uninsured motorist coverage. McKimm, 790 S.W.2d at 528; Phoenix Cotton Oil Co. v. Royal Indem. Co., 140 Tenn. 438, 442, 205 S.W. 128, 130 (1918). In the instant case, GEICO contends that Alcazar's compliance with the notice provision was a condition precedent for coverage. Because Alcazar failed to provide notice "as soon as possible" pursuant to the insurance contract, GEICO asserts that coverage was automatically forfeited.


### C.  Traditional Approach

For years Tennessee has consistently adhered to the traditional common law approach that:

> (1) notice is a condition precedent to recovery under the policy and (2) there need not be any showing of prejudice.

Hartford Acc. & Indem. Co. v. Creasy, 530 S.W.2d 778, 779 (Tenn. 1975) (citing Phoenix Cotton, 205 Tenn. 438, 205 S.W. 128). Although this approach is grounded on a strict contractual interpretation methodology, this Court has acknowledged underlying public policy rationales that serve as the basis for the inclusion of this "vital and indispensable condition precedent" in an insurance policy:

> [W]e recognize that the notice requirement of an insurance policy providing uninsured motorist coverage based on hit-and-run incidents, while founded in contract, also are deeply rooted in public policy considerations. Not only is the insuror entitled to notice in order that it may make prompt investigation and prepare for the defense of the

> claim, it is entitled to protect its interests in an area susceptible to the presentation of spurious claims. Also, it is in the public interest that litigation be minimized and, to this end, it is essential that the insurance company be in a position to settle claims on a knowledgeable basis.

Creasy, 530 S.W.2d at 779; see also Allstate Ins. Co. v. Fitzgerald, 743 F. Supp. 539, 542 (W.D. Tenn. 1993). One commentator has noted:

> The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making photographs thereof for use at the trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. If the insurer is given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation.

1 Eric Mills Holmes & Mark S. Rhodes, Appleman on Insurance § 4.30 (2d ed. 1996); see also 13A George J. Couch, et al., Couch on Insurance § 49:50 (2d rev. ed. 1982); Richard L. Suter, *Insurer Prejudice: An Analysis of an Expanding Doctrine in Insurance Coverage Law*, 46 Me. L. Rev. 221, 223-24 (1994); F. Warren Jacoby, Comment, *The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice*, 74 Dick. L. Rev. 260, 262-63 (1970); Comment, 68 Harv. L. Rev. 1436, 1436-38 (1955). Conversely, the public is harmed by untimely claims due to increased premiums and inadequate insurance administration.[3] Waters v. American Auto. Ins. Co., 363 F.2d 684, 687 (D.C. Cir. 1966); Yorkshire Indem. Co. v. Roosth & Genecov Prod. Co., 252 F.2d 650, 656-57 (5th Cir. 1958); Comment, 74 Dick. L. Rev. at 263.

These sentiments have been echoed by courts in other jurisdictions that have adhered to the traditional approach. See, e.g., American Home Assur. Co. v. Int'l Ins., 684 N.E.2d 14, 16 (N.Y. 1997) ("[I]t is settled law in New York that '[a]bsent a

---

[3] A prompt notice requirement has also been justified because it enables the insurer to preserve an adequate reserve fund. Utica Mut. Ins. v. Fireman's Fund Ins. Co., 748 F.2d 118, 121 (2d Cir. 1984). Furthermore, in certain circumstances in which an insured's conduct is harming the environment, prompt notice benefits the public by enabling the insurer to prevent the insured's continued conduct. See Commercial Union Ins. v. Int'l Flavors & Fragrances, 822 F.2d 267, 271 (2d Cir. 1987).

valid excuse, a failure to satisfy the notice requirement vitiates the policy . . . and the insurer need not show prejudice before it can assert the defense of noncompliance.'") (internal citations omitted)); Marez v. Dairyland Ins. Co., 638 P.2d 286 (Colo. 1981); Public Service Co. v. Wallis, 955 P.2d 564, (Colo. App. 1997); Viani v. Aetna Ins. Co., 501 P.2d 706 (Idaho 1972), overruled on other grounds, 565 P.2d 564 (1977); State Farm Mut. Auto. Ins. Co. v. Cassinelli, 216 P.2d 606 (Nev. 1950); Campbell & Co. v. Utica Mut. Ins. Co., 820 S.W.2d 284 (Ark. App. 1991)[4]; Hartford Ins. Group v. Liberty Mut. Ins. Co., 311 A.2d 506 (D.C. App. 1973).

### D. Modern Trend

While once the overwhelming majority approach in this country, the number of jurisdictions that still follow the traditional view has dwindled dramatically. See Charles C. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay In Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R. 4th 141, § 3[a] (1984 & Supp. 1997); 13A Couch on Insurance §§ 49:338 & 49:50; 1 Appleman on Insurance § 4.30. In recent years a "modern trend" has developed, and a vast majority of jurisdictions now consider whether the insurer has been prejudiced by the insured's untimely notice. See id.; 32 A.L.R. 4th 141, §§ 3[b]-5; 13A Couch on Insurance §§ 49:339 & 49:50. Although these courts have enumerated various public policy justifications to support this shift, a review of these cases indicates that three rationales are particularly pervasive: 1) the adhesive nature of insurance contracts; 2) the public policy objective of compensating tort victims; and 3) the inequity of the insurer receiving a windfall due to a technicality.

Many states have recognized the adhesive nature of insurance contracts as

---

[4] Although the Arkansas Court of Appeals, sitting en banc, held that prejudice is irrelevant with regard to claims-made policies, it suggested that a different outcome would apply to occurrence policies. Id. at 288. Under a "claims-made" policy, coverage is only provided if a *claim* is made during the policy period. Under an "occurrence" policy, coverage is provided if the qualifying *incident* occurs within the period of the policy, regardless of when the claim is filed. Id. at 285. A federal district court has subsequently held that Arkansas law still applies the traditional rule to occurrence policies. State Farm Fire & Cas. Co. v. Michael, 822 F. Supp. 575, 581 (W.D. Ark. 1993).

a justification for a more liberal approach. In reality, most insurance policies are form contracts drafted by the insurer, and the insured has little, if any, bargaining power. When adopting the modern trend, the Supreme Court of Pennsylvania in Brakeman v. Potomac Ins. Co., 371 A.2d 193 (Pa. 1977), cogently articulated this justification as follows:

> The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can 'bargain' is the monetary amount of coverage. And . . . notice of accident provisions . . . are uniformly found in liability insurance policies. Indeed, a review of cases indicates that often the policies express the condition in identical language.

Id. at 196 (internal citations omitted); see also Cooperative Fire Ins. v. White Caps, Inc., 694 A.2d 34, 37 (Vt. 1997); Jones v. Bituminous Cas. Corp., 821 S.W.2d 798, 801-02 (Ky. 1991); Aetna Cas. & Surety Co. v. Murphy, 538 A.2d 219, 222 (Conn. 1988); Ouellette v. Maine Bonding & Cas. Co., 495 A.2d 1232, 1235 (Me. 1985); Great Am. Ins. Co. v. C.G. Tate Const., 279 S.E.2d 769, 774 (N.C. 1981); Johnson Controls, Inc. v. Bowes, 409 N.E.2d 185, 187 (Mass. 1980); Suter, 46 Me. L. Rev. at 234-35.

Another predominant basis for the modern trend is that it advances the public policy goal of compensating accident victims, including innocent third parties. According to the Court in Brakeman:

> Insurance contracts are not purely private matters between insurance companies and their insureds; rather there is a public interest in automobile liability insurance contracts and that is the protection of innocent victims of automobile accidents. This public interest would be disserved by a rule that denied an accident victim recovery against the insurance company because it received late notice of the accident, even though it suffered no prejudice as a consequence thereof.

Brakeman, 371 A.2d at 198 n.8 (internal citations omitted); see also C.G. Tate, 279 S.E.2d at 774 ("[A]doption of the modern rule . . . promotes the social function of

insurance coverage: providing compensation for injuries sustained by innocent members of the public."); Weaver Bros. Inc. v. Chappel, 684 P.2d 123, 125 (Alaska 1984); Miller v. Dilts, 463 N.E.2d 257, 265 (Ind. 1984); Oregon Auto. Ins. Co. v. Salzberg, 535 P.2d 816, 820 (Wash. 1975); Cooper v. Government Employees Ins. Co., 237 A.2d 870, 873-74 (N.J. 1968); Fox v. National Sav. Ins. Co., 424 P.2d 19, 25 (Okl. 1967); Suter, 46 Maine L. Rev. at 235.

A third popular rationale supporting the modern trend focuses on the intent of the inclusion of the notice provision in the insurance contract. It is reasoned that notice requirements are devised in order to insulate the insurer from prejudice and, thus, in the absence of prejudice the notice provisions should not be strictly enforced. One court has noted:

> The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice. . . .

Miller v. Marcantel, 221 So.2d 557, 559 (La. App. 1969). Consequently, courts have shifted away from the technical aspects of contractual interpretation so that an insurer can not take advantage of "an undeserved windfall" as a result of forfeiture. Ouellette, 495 A.2d at 1235 (citing Brakeman, 371 A.2d at 196-97); see also Murphy, 538 A.2d at 420; Weaver Bros., 684 P.2d at 125.

### E. Public Policy

Public policy in Tennessee "is to be found in its constitution, statutes, judicial decisions and applicable rules of common law." State ex rel. Swann v. Pack, 527 S.W.2d 99, 112 n. 17 (Tenn.1975), cert. denied, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976) (citing Home Beneficial Ass'n. v. White, 177 S.W.2d 545 (Tenn. 1944)); see also Crawford v. Buckner, 839 S.W.2d 754, 759 (Tenn. 1992). Although the determination of public policy is primarily a function of the legislature, the judiciary may determine public policy in the absence of any constitutional or statutory declaration. Crawford, 839 S.W.2d at 759 (citing Hyde v. Hyde, 562 S.W.2d 194, 196 (Tenn.1978); Cavender v. Hewitt, 145 Tenn. 471, 475, 239 S.W. 767, 768 (1921)).

In Speigel v. Thomas, Mann & Smith, P.C., 811 S.W.2d 528 (Tenn. 1991), this Court stated:

> Unless a private contract tends to harm the public good, public interest, or public welfare, or to conflict with the constitution, laws, or judicial decisions of Tennessee, it does not violate public policy. The reverse is also true: A contract with a tendency to injure the public violates public policy.

Id. at 530 (internal citations omitted).

We believe that the public policy of Tennessee is consistent with the overwhelming number of our sister states that have adopted the modern trend. We first note that this Court has explicitly found that "[a]n insurance policy is a contract of adhesion drafted by the insurer." Bill Brown Const. v. Glens Falls Ins., 818 S.W.2d 1, 12 (Tenn. 1991). In Brandt v. Mutual Ben. Health & Acc. Ass'n, 202 S.W.2d 827 (Tenn. App. 1947), our Court of Appeals stated:

> It is a general principle, pervading the law of all forms of insurance, that policies shall be liberally construed in favor of the insured. This because courts do not shut their eyes to realities; they know that the policy is a contract of "adhesion," i.e. not one which the parties have reached by mutual negotiation and concession, not one which truly expresses any agreement at which they have arrived, but one which has been fixed by the insurer and to which the insured must adhere, if he chooses to have insurance.

Id. at 831; see also Harrell v. Minnesota Mut. Life Ins. Co., 937 S.W.2d 809, 814 (Tenn. 1996); Tennessee Farmers Mut. Ins. Co. v. Witt, 857 S.W.2d 26, 32 (Tenn. 1993). As such, we attempt to construe insurance contracts so as to provide coverage. Id.

In addition, the public policy of this State has long promoted the notion that victims of torts should recover compensation for their injuries. See, e.g., Collins v. East T., V. & G. R.R. Co., 56 Tenn. (9 Heiskell) 841 (1872). Tennessee's uninsured motorist coverage statute, Tenn. Code Ann. §§ 56-7-1201 et seq. (1994 Repl. & Supp. 1998), was enacted "for the protection of persons insured thereunder who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles." Tenn. Code Ann. § 56-7-1201(a) (Supp. 1998). We believe that this public policy may be thwarted by the harsh application of the

legalistic traditional approach, particularly since innocent third parties risk being adversely affected.

Third, we agree with our sister states that it is inequitable for an insurer that has not been prejudiced by a delay in notice to reap the benefits flowing from the forfeiture of the insurance policy. In light of the adhesive nature of such contracts as well as our inclination to construe these contracts against the drafter/insurer, we believe that this State's public policy disfavors the ability of an insurer to escape its contractual duties due to a technicality.

In fact, case law suggests that this State has begun to consider prejudice to the insurer when interpreting an insurance contract. In McKimm v. Bell, 790 S.W.2d 526 (Tenn. 1990), the plaintiffs/insureds sought to enforce an uninsured motorist policy. After concluding that the plaintiffs had provided notice "as soon as practicable" in accordance with the policy, we considered whether the insureds complied with a clause requiring that the insureds timely provide the insurer with documentation, such as proof of loss, medical forms, and property damage assessments. Id. at 529-30. We found:

> In our opinion, plaintiffs acted reasonably under the circumstances and gave the material required information as it became available and was requested. Further, there is no showing that any prejudice resulted to [the insurer] from the actions, or inaction, of the plaintiffs.

Id. at 530; see also Bush v. Exchange Mut. Ins. Co., 866 S.W.2d 575, 577 (Tenn. App. 1993).

On one hand, we are reluctant to overturn established precedent in this State that has followed the traditional approach for years.[5] We note, however, that one of

---

[5] In City of Memphis v. Overton, 392 S.W.2d 98, 100 (Tenn. 1965), this Court acknowledged that "it is axiomatic that this State has long approved of the doctrine of stare decisis." However, we also noted Justice Brandeis's dissent in Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815 (1932), quoting approvingly:

> Stare decisis is not . . . a universal inexorable command. "The rule of stare decisis, though one tending to consistency and uniformity of decision is not inflexible".

Overton, 392 S.W.2d at 100 (quoting Burnet, 285 U.S. at 405-06, 52 S.Ct. at 447 (Brandeis, J., dissenting) (internal citations omitted)); see also Planned Parenthood v. Casey, 505 U.S. 833, 982-83,

-11-

the main reasons that prompted this Court in 1918 to embrace the traditional approach in Phoenix Cotton was the fact that this was the approach adopted by nearly all, if not all, of our sister states that had considered the issue. Phoenix Cotton, 140 Tenn. at 443-44, 206 S.W. at 130. In North River Ins. Co. v. Johnson, 757 S.W.2d 334 (Tenn. App. 1988), our Court of Appeals, in dicta, commented:

> Interestingly, Creasy, in reaffirming Phoenix Cotton Oil Co., noted the opinion quoted with approval a Massachusetts case holding "notice is one of the essentials of the cause of action". 140 Tenn. 444, 205 S.W.2d at 130. In 1980, however, Massachusetts in Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 409 N.E.2d 185 (1980), conceding that its prior decisions were too restrictive, prospectively held an insurer would be required to prove the notice provision had been breached and the breach resulted in prejudice to the insurer in order to avoid its obligations on the policy.

Id. at 335-36[6]. In fact, our research indicates that only two states whose highest courts have considered the issue within the last twenty years have continued to strictly adhere to the traditional approach. See American Home Assur., 684 N.E.2d 14 (New York); Marez, 638 P.2d 286 (Colorado).


Moreover, our position is supported by the Restatement (Second) of Contracts. Section 229 of the Restatement states:

> To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.

Restatement (Second) of Contracts § 229 (1981). A comment to this section elaborates this concept:

---

112 S.Ct. 2791, 2875, 120 L.Ed.2d 674 (1992) (Scalia, J., dissenting).

[6] Judge Franks, writing for the Court, also stated:

> This [the modern trend] is an appealing approach since insurance policies, unlike other contracts, are not purely private agreements but affect the public generally. The argument is persuasive and its application would be fair and manifestly equitable since the notice requirement is for the benefit of the insurer and, until it is established that non-compliance has resulted in detriment to the insurer, the courts should not predicate a forfeiture on technical non-compliance. Moreover, innocent third party beneficiaries are often adversely affected by forfeiture of coverages where premiums have been paid for such purpose.

Id. at 335.

> In determining whether the forfeiture is "disproportionate," a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture. The character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied.

Id. § 229 cmt. b. Applying this principle to the circumstances at hand, we find that the notice requirement is immaterial to the insurance contract in the event that the insurer is not prejudiced. Consequently, the insured's failure to comply with this requirement in such instance is excused, since a "disproportionate forfeiture" ensues. Id.; see also Murphy, 538 A.2d at 221; Suter, 46 Me. L. Rev. at 235-36; 5 Samuel Williston, Law of Contracts §§ 769-811 (3d ed. 1961 & Supp. 1998); 3A Arthur Corbin, Corbin on Contracts, § 754 (1960 & Supp. 1998). Though we are hesitant to carve out an exception to the axiom proscribing judicial alteration of the terms of an unambiguous contract,[7] we have determined, due to compelling public policy justifications, that it is now appropriate to depart from a rigid application of the traditional approach. We join the vast majority of jurisdictions which take into consideration the degree to which the insurer has been prejudiced by the delay in notice.

## F. Burden of Proof

After resolving to join the modern trend, we must now determine how to incorporate the consideration of prejudice into our analysis. In the process, we must balance the equities between the parties. States that consider prejudice essentially follow one of three different approaches: 1) once it is shown that the insured has breached the notice provision, the contract is, nevertheless, effective unless the insurer shows that it has been prejudiced by the delay; 2) once it is shown that the insured has breached the notice provision, a rebuttable presumption exists that the insurer has been prejudiced by the delay; and 3) prejudice to the insurer is considered as a factor in the initial inquiry of whether the insured provided timely notice. See 32 A.L.R. 4th 141, 13A Couch on Insurance §§ 49:338; 49:339; 49:50;

---

[7] See Central Adjustment Bureau, Inc. v. Ingram, 678 S.W.2d 28, 37 (Tenn.1984); Warren v. Metro, 955 S.W.2d 618, 623 (Tenn. App. 1997).

1 Appleman on Insurance § 4.30.

A clear plurality of states hold that once it is demonstrated that the insured breached the notice provision, the burden of proof is allocated to the insurer to prove that it has been prejudiced by the breach. See, e.g., National Union Fire Ins. Co. v. F.D.I.C., 957 P.2d 357, 368 (Kan. 1998); Weaver v. State Farm Mut. Auto. Ins., 936 S.W.2d 818, 821 (Mo. 1997); White Caps, 694 A.2d at 38 (insurer must show "substantial prejudice"); Vermont Mut. Ins. Co. v. Singleton, 446 S.E.2d 417, 421-22 (S.C. 1994) (insurer must show "substantial prejudice"); Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 649 (Me. 1993); Jones, 821 S.W.2d at 803; Weaver Bros., 684 P.2d at 126; C.G. Tate, 279 S.E.2d at 775[8]; Independent School Dist. No. 1 v. Jackson, 608 P.2d 1153, 1155 (Okl. 1980); Brakeman, 371 A.2d at 198; Salzberg, 535 P.2d at 819; Rampy v. State Farm Mut. Auto. Ins. Co., 278 So.2d 428, 434 (Miss. 1973) (insurer must show "substantial prejudice"); Cooper, 237 A.2d at 874; Campbell v. Allstate Ins. Co., 384 P.2d 155, 157 (Cal. 1963); 32 A.L.R. 4th § 5. Many of these states reason that it is more equitable to place the burden on the insurer, since the insurer is the entity that seeks to repudiate its obligations under an adhesive contract. See, e.g., Brakeman, 371 A.2d at 198; Cooper, 237 A.2d at 874 n.3; Note, 74 Dick. L. Rev. at 272-73. Furthermore, it is reasoned that the insurer is in a much better position to prove that it has been prejudiced, especially since the insured would otherwise be forced to prove a negative: that the insurer was not prejudiced. As the Supreme Court of Kentucky stated in Jones:

> There are two reasons for imposing the burden on the insurance carrier to prove prejudice, rather than imposing on the claimant the burden to prove no prejudice resulted. The first is the obvious one: it is virtually impossible to prove a negative, so it would be difficult if not impossible for the claimant to prove the insurance carrier suffered no prejudice. Secondly, the insurance carrier is in a far superior position to be knowledgeable about the facts which establish whether prejudice exists. Indeed, it is difficult to imagine where the claimant would look for evidence that no prejudice exists.

Jones, 821 S.W.2d at 803; see also White Caps, 694 A.2d at 38; Weaver Bros., 684

---

[8] North Carolina has a three-step process that makes it somewhat of a nuance from other states: first, it is determined whether timely notice was given; then the insured must show that he or she acted in good faith; and finally, if good faith is shown, the burden shifts to the insurer to show that it has been "materially prejudiced by the delay." Id. at 776.

P.2d at 126; C.G. Tate, 279 S.E.2d at 776; Campbell, 384 P.2d at 157. Another rationale is that this burden allocation will encourage the insurer to undertake a timely preliminary investigation of the insured's claim in order to protect its own interest. C.G. Tate, 279 S.E.2d at 775-76.

Some jurisdictions hold that when the insured fails to comply with notice requirements, it is presumed that the insurer is prejudiced by the breach. Thus, the insured bears the burden of rebutting this presumption. See Simpson v. United States Fid.& Guar. Co., 562 N.W.2d 627, 631-32 (Iowa 1997)[9]; Miller, 463 N.E.2d at 265; Murphy, 538 A.2d at 224; Gerrard Realty Corp. v. American States Ins. Co., 277 N.W.2d 863, 872 (Wis. 1979)[10]; Tiedtke v. Fidelity & Cas. Co., 222 So.2d 206, 209 (Fla. 1969); Champion Spark Plug v. Fidelity & Cas. Co., 687 N.E.2d 785, 791 (Ohio App. 1996); Fillhart v. Western Res. Mut. Ins. Co., 684 N.E.2d 1301, 1303 (Ohio App. 1996)[11], 32 A.L.R. 4th § 3[b]. This approach is predicated upon the fact that the insured is the party "seeking to be excused from the consequences of a contract provision with which he has concededly failed to comply." Murphy, 538 A.2d at 224. It has also been reasoned that the insured is in a better position to demonstrate that vital witnesses are still available and crucial informaion has not been lost. See, e.g., Champion Spark Plug, 687 N.E.2d at 792 (stating that the insurer is "not in a position to discern what information may now be unavailable that they could have discovered with timely notice.").

Acknowledging that the notice provisions are included in policies in order to ensure that insurers may conduct a proper investigation, the Supreme Court of Indiana explained this rebuttable presumption approach as follows:

---

[9] Iowa has a nuance whereby the insurer bears the burden of proof in the event that the insured demonstrates excuse or legal justification. Id. (citing Met-Coil Sys. Corp. v. Columbia Cas. Co., 524 N.W.2d 650, 654 (Iowa 1994)).

[10] Wisconsin has a statute stating that a policy may not be forfeited pursuant to a notice provision if notice is provided within one year of the time provided in the policy, "unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit." Wis. Stat. Ann. § 631.81 (1995). Wisconsin courts have held that if notice is provided more than one year after the time specified in the policy, "there is a rebuttable presumption of prejudice and the burden of proof shifts to the claimant." Gerrard, 277 N.W.2d at 872; see also Rentmeester v. Wisconsin Lawyers Mut. Ins. Co., 473 N.W.2d 160, 164 (Wis. App. 1991).

[11] Ohio courts appear to be split on this issue. Cf. Owens-Corning Fiberglas v. American Centennial, 660 N.E.2d 770, 784 (Ohio Com.Pl. 1995), discussed infra.

> This adequate investigation is often frustrated by a delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit. This is not in conflict with the public policy theory that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some insignificant failure to notify. The injured party can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice. Thus, both parties are able to put forth their respective positions in the legal arena.

Miller, 463 N.E.2d at 265-66. Moreover, the Supreme Court of Connecticut has analogized the issue to burden of proof allocation in unjust enrichment situations in which the breaching party must show that the other party incurred a gain:

> Principles of unjust enrichment and restitution bear a family resemblance to those involved in considerations of forfeiture. Under both sets of principles, the law has come to permit a complainant to seek a fair allocation of profit and loss despite the complainant's own failure to comply fully with his contract obligations. The determination of what is fair, as a factual matter, must however depend upon a proper showing by the complainant who seeks this extraordinary relief.

Murphy, 538 A.2d at 224.

Finally, a few states have included prejudice to the insurer as one of several factors to be considered when determining whether the insured provided timely notice. Thus, prejudice to the insurer is viewed along with such factors as the insured's excuse for delay, the length of the delay, and the sophistication of the insured. See, e.g., Koski v. Allstate Ins. Co., 572 N.W.2d 636, 639 (Mich. 1998) (citing Wendel v. Swanberg, 185 N.W.2d 348 (Mich. 1971)); State Auto Mut. Ins. Co. v. Youler, 396 S.E.2d 737 (W.Va. 1990); State Farm Fire & Cas. Co. v. Walton, 423 S.E.2d 188, 192 (Va. 1992) (citing State Farm Fire & Cas. Co. v. Scott, 372 S.E.2d 383, 385 (Va. 1988))[12]; State Farm Mut. Auto. Ins. Co. v. Burgess, 474 So.2d 634, 637 (Ala. 1985); Lumbermens Mut. Cas. Co. v. Oliver, 335 A.2d 666, 668 (N.H. 1975); American Country -Ins. Co. v. Bruhn, 682 N.E.2d 366, 370 (Ill. App. 1997);

---

[12] These Virginia cases state that the insurer need not show that it has been prejudiced in the event that the violation of the notice clause is "substantial and material." Id.; Walton, 423 S.E.2d at 192.

<u>Owens-Corning</u>, 660 N.E.2d at 784; 32 A.L.R. 4th § 4.[13]  On its face, this approach is analytically flawed.  While prejudice may potentially arise from an insured's failure to file notice in accordance with the contract, it is certainly not a factor which has any bearing on an insured's ability to provide timely notice.  Another major fallacy of this approach is that consideration of prejudice could inadvertently serve to the detriment of the insured: an insured who would otherwise be adjudged to have provided timely notice may be considered to have acted late since the insurer was prejudiced.  <u>See</u> <u>Cooper</u>, 237 A.2d at 873; Comment, 74 Dick. L. Rev. at 268.

### G.  Tennessee Approach

After carefully weighing the advantages and disadvantages of each of these approaches, we believe that the rebuttable presumption rule is the soundest approach in the context of an uninsured/underinsured motorist policy[14] as it provides the best balance between the competing interests.   We agree with the Supreme Court of Connecticut that the instant issue is akin to unjust enrichment law: in both instances, an undeserving party seeks forgiveness for his or her own breach.[15]  <u>See</u> <u>Murphy</u>, 438 A.2d at 224.  Therefore, once it is determined that the insured has failed to provide timely notice in accordance with the insurance policy, it is presumed that the insurer has been prejudiced by the breach. The insured, however, may rebut this presumption by proffering competent evidence that the insurer was not prejudiced by the insured's delay.

Although summary judgment is not proper in the present case, we recognize

---

[13]  As noted in Footnote No. 11, Ohio courts appear to be split on this issue.  In <u>Owens-Corning</u>, the court noted that the Ohio Supreme Court acknowledged the rebuttable presumption approach in <u>Ruby v. Midwestern Indem. Co.</u>, 532 N.E.2d 730 (Ohio 1988), but opined that since the Supreme Court did not include the rule in its syllabus, it implicitly rejected it.  <u>Owens-Corning</u>, 660 N.E.2d at 784; <u>but see</u> <u>Champion Spark Plug</u>, 687 N.E.2d at 791; <u>Fillhart</u>, 684 N.E.2d at 1303.

[14]  Since the issue is not before us, we need not decide whether this approach should apply to a standard liability policy.

[15]  In Tennessee, the party seeking relief under a theory of quantum meruit bears the burden of proof.  <u>D.T. McCall & Sons v. Seagraves</u>, 796 S.W.2d 457, 464 (Tenn. App. 1990); <u>John J. Heirigs Const. Co. v. Exide</u>, 709 S.W.2d 604, 607 (Tenn. App. 1986) ("If plaintiff is to recover on the theories of quantum meruit and unjust enrichment it must carry the burden of proving the value of the work performed.") (citing <u>Moyers v. Graham</u>, 83 Tenn. 57 (1885); <u>Sadler v. Middle Tenn. Elec. Membership Corp.</u>, 259 S.W.2d 544 (Tenn. App.1952)).

that summary judgment may, nevertheless, be appropriate in some circumstances. We quote approvingly the following *non-exclusive* guidelines for determining whether the insurer has been prejudiced:

> the availability of witnesses to the accident; the ability to discover other information regarding the conditions of the locale where the accident occurred; any physical changes in the location of the accident during the period of the delay; the existence of official reports concerning the occurrence; the preparation and preservation of demonstrative and illustrative evidence, such as the vehicles involved in the occurrence, or photographs and diagrams of the scene; the ability of experts to reconstruct the scene and the occurrence; and so on.

C.G. Tate, 279 S.E.2d at 776 (quoting Great Am. Ins. Co. v. C.G. Tate Const., 265 S.E.2d 467, 473 (N.C. App. 1980)). We acknowledge that attempting to prove what information the insurer would have been able to discover had notice been promptly provided would be difficult for either party. See Comment, 68 Harv. L. Rev. at 1438; Jones, 821 S.W.2d at 803; Brakeman, 371 A.2d at 198; Campbell, 384 P.2d at 157. However, we are less sympathetic to the insured in this instance, since the insured bears sole responsibility for breaching a term of the contract that was intended to preserve fairness to the insurer.

## III. CONCLUSION

In sum, we overrule Creasy, Phoenix Cotton, and other cases in this State holding that prejudice to the insurer is irrelevant to whether forfeiture of an insurance contract results from the insured's breach of a notice provision. Instead, the appropriate inquiry is: 1) Did the insured provide timely notice in accordance with the contract? 2) If not, did the insured carry its burden of proving that the insurer was not prejudiced by the delay? This standard shall apply to (1) all cases tried or retried after the date of this opinion, and (2) all cases pending on appeal in which the prejudice issue was raised in the trial court.

Consequently, the decisions of the lower courts granting summary judgment to GEICO are reversed. This case is remanded to the trial court for findings

consistent with this opinion. Costs of the appeal are taxed equally to Alcazar and

GEICO.

_____
Frank F. Drowota, III,
Justice

**CONCUR:**
Anderson, C.J.
Birch, Holder, Barker, J.J.