IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

# BETTY BERRYHILL v. CHARLES THOMAS RHODES

**Appeal from the Juvenile Court for Shelby County**
**No. G8355    Kenneth Turner, Judge**

---

**No.  W1997-00167-SC-R11-CV - Decided May 30, 2000**
**FOR PUBLICATION**

---

JUSTICE BIRCH, with whom JUSTICE BARKER joins, concurring and dissenting.

I fully concur in the majority's decision to remand this case to determine whether deviation from the guidelines is appropriate.  I cannot, however, accept the majority's analysis of private agreements for child support. To the extent that the majority opinion suggests that such agreements are per se void, and thus never enforceable, I must respectfully dissent.[1]

It is my opinion that parents of non-marital children should be permitted, indeed encouraged, to agree upon child support.  The parties must, however, fully realize that any such private agreement is always subject to modification by the appropriate judicial authority.  Viewed in this manner, one can reasonably predict that private agreements which meet applicable criteria will most likely be approved when subjected to court scrutiny.  Conversely, if the agreement fails in this regard, then it is unlikely to receive court approval.

Private agreements for child support have been statutorily encouraged.  As the majority notes, Tenn. Code Ann. § 36-5-101(h) is the statutory provision governing private agreements for child support.  Tennessee Code Annotated § 36-5-101(h) provides that:

> [n]othing in this section shall be construed to prevent affirmation, ratification and incorporation in a decree of <u>an agreement between the</u>

---

[1]Reading the majority opinion, it is difficult to determine if my colleagues hold that private agreements for child support are per se void, void on a case by case basis, or voidable.  For example, the majority first insists that "[p]rivate agreements used to circumvent the obligations set forth in the statutes and guidelines contravene" public policy.  This statement implies that in some cases private agreements for child support are enforceable.  Later, however, the majority concludes that "private agreements for the payment of child support violate public policy," suggesting that such agreements are per se void and thus never enforceable.

> parties as to child support and maintenance of a party or as to child
> support.

Tenn. Code Ann. § 36-5-101(h) (Supp. 1998) (emphasis added).  In interpreting this statute, I am reminded that a "basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature." Carson Creek Vacation Resorts, Inc. v. State Dep't. of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993).  In so doing, a court must not "unduly restrict[] or expand[] a statute's coverage beyond its intended scope." Worley v. Weigels Inc., 919 S.W.2d 589, 593 (Tenn. 1996) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)).  Rather, a statute's purpose must be ascertained from the plain and ordinary meaning of its language. Westland West Community Ass'n v. Knox County, 948 S.W.2d 281, 283 (Tenn. 1997).  Finally, a court must not question the "reasonableness of [a] statute or substitut[e] its own policy judgment[s] for those of the legislature." BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997).  Thus, a court must "presume that the legislature says in a statute what it means and means in a statute what it says there." Id.  A statute, therefore, must be construed as it is written. See Jackson v. Jackson, 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948).

Applying these rules of statutory construction to Tenn. Code Ann. § 36-5-101(h), I find the statute clear and unambiguous.  Tennessee Code Annotated § 36-5-101(h) authorizes individuals to enter into private agreements for child support and places the enforcement of such agreements in the discretion of the trial court.  When "the language contained within the four corners of a statute is plain, clear and unambiguous, the duty of the courts is simple and obvious, 'to say sic lex scripta, and obey it.'" Hawks v. City of Westmoreland, 960 S.W.2d 10, 16 (Tenn. 1997) (quoting Miller v. Childress, 21 Tenn. (2 Hum.) 320, 321-22 (1841)).  Accordingly, in cases such as this, courts are not at liberty to depart from the words of the statute. Id.  Thus, under Tenn. Code Ann. § 36-5-101(h), parties are permitted to enter into private agreements for child support, the enforceability of which remains within the purview of the court. See Tenn. Code Ann. § 36-5-101(h) (1996).  An interpretation to the contrary would unduly restrict the statute's intended scope. See Worley, 919 S.W.2d at 593.

Despite our statute's plain language, the majority contends that private agreements for child support contravene public policy.[2]  "[T]he determination of public policy is primarily a function of the legislature," and the judiciary determines "public policy in the absence of any constitutional or statutory declaration." Alcazar v. Hayes, 982 S.W.2d 845, 851 (Tenn. 1998). In promulgating Tenn. Code Ann. § 36-5-101(h), our General Assembly has made clear that private agreements for child support are consistent with the public policy and ensured that such agreements do not circumvent the child support guidelines or our statutory provisions relating to child support. See Tenn. Code Ann. § 36-5-101(h) (Supp. 1998) ("In any such agreement, the parties must affirmatively acknowledge that no action by the parties will be effective to reduce child support after the due date

---

[2]The majority cites several cases from other jurisdictions for the proposition that private agreements for child support contravene public policy.  These cases are distinguishable, both factually and legally, from this case.

of each payment, and that they understand that court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated under the terms of the agreement."). Even if we should disagree with such a policy, it is not for this Court to question the statute's reasonableness or substitute our own policy judgments for those of the General Assembly. BellSouth Telecomms., Inc., 972 S.W.2d at 673.

Additionally, under Tenn. Code Ann. § 36-5-101(h), a court can refuse to enforce a private agreement for child support. This discretion serves as a check against agreements which circumvent the obligations set forth in the guidelines or our statutes.

Indeed, as stated earlier, parents of non-marital children should be encouraged to enter into private agreements to support their children. I am perturbed by the result created by the majority opinion. Here, a father who never sought to evade parental responsibility as to paternity or support agreed with the child's mother to pay a sum certain every month for the support of the child. This father faithfully and dutifully made these payments up to the child's eighteenth birthday. What more can society rightfully require of him?