# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 19, 2002 Session

## SHERI M. ENGLISH, ET AL. v. CHRIS PRETTI, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 89929 T.D.     John R. McCarroll, Jr., Judge**

---

**No. W2001-01657-COA-R3-CV - Filed October 24, 2002**

---

The trial court awarded summary judgment to the Plaintiffs' uninsured motorist insurance carrier, finding that the carrier's liability was offset by the workers' compensation award which the Plaintiff received for her injuries. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Joseph M. Sparkman, Southaven, Mississippi, for the appellants, Sheri M. English and husband, David W. English.

Robert M. Fargarson, Memphis, Tennessee, for the appellee, Allstate Insurance Company.

## OPINION

The relevant facts in this case are undisputed. In September of 1996, Sheri English was walking across a lawn in a residential neighborhood of Memphis when a utility trailer disconnected from a motor vehicle operated by Chris Pretti. The trailer was owned by Glen Caldwell, a passenger in the motor vehicle. The trailer struck Ms. English, causing serious and permanent injuries. At the time of the injury, Ms. English was in the course and scope of her employment with Trinity Health Care Services. She received workers' compensation benefits of $106,675.92 for her injuries.

In September of 1997, Sheri English and her husband, David English, filed a complaint for negligence against Chris Pretti and Glen Caldwell. Mr. English asserted an additional cause of action for loss of consortium. Notice was also served on Allstate Insurance Co. ("Allstate"), the Englishes' uninsured motorist carrier. Trinity Health Care Services intervened, alleging it was entitled to a subrogation lien under the Tennessee Workers' Compensation Statute. Disputes between the Englishes and Chris Pretti, Glen Caldwell and Trinity Health Care Services have been

settled and are not before this Court. Allstate denied liability under the policy and was awarded summary judgment in the court below. The Englishes now appeal the award of summary judgment to Allstate.

### *Issues Presented*

The issue as presented by the Englishes for review by this Court is whether the trial court erred by awarding summary judgment to Allstate. We restate the issues as:

> (1) Did the trial court err in determining that under the contract for insurance Allstate's liability to Ms. English was offset by the workers' compensation amounts she received?

> (2) Did the trial court err in determining that liability to Mr. English for his loss of consortium damages was offset by the workers' compensation award to Ms. English?

### *Standard of Review*

Our review of an award of summary judgment is *de novo*, with no presumption of correctness accorded to the judgment of the trial court. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Summary judgment is appropriate where there is no genuine issue regarding material facts relevant to a claim, and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. In determining whether to award summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of that party. *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 89 (Tenn. 2000). When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.* Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts. *Id.*

### *Offset of Liability for Ms. English's Injuries*

The parties do not dispute that the Englishes' uninsured motorist coverage with Allstate was limited to $100,000 for bodily injury to one person and $300,000 for all persons in one accident. The limitations section of the Englishes' insurance policy with Allstate provides that coverage amounts will be offset by recovery received from other enumerated sources. The section states:

**Limitations of Liability**
2. Damages payable will be reduced by:
>> a) all amounts paid by or on behalf of the owner or operator of the uninsured auto, including an underinsured auto or anyone else

responsible. This includes all sums paid under the bodily injury liability coverage of this or any other auto policy.

b) all amounts paid or payable under any workers compensation law, disability benefits law, or similar law, Automobile Medical Payments, or any similar medical payments coverage under this or any other auto policy. If the accident arises from the use of an uninsured motor vehicle, we aren't obligated to make any payment under this coverage until the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

Allstate submits that the language of the policy provides that Allstate's liability would be offset by any amount paid by workers' compensation which, in this case, was greater than the policy maximum of $100,000 for a single injury. Such provisions limiting or reducing liability where other benefits are available are permissible pursuant to Tenn. Code Ann. § 56-7-1205, which reads:

**Minimum policy limits not increased. --** Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in §55-12-107, or the uninsured motorist liability limits of the insured's policy if such limits are higher than the limits described in §55-12-107. *Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits.*

Tenn. Code Ann. § 56-7-1205 (2000)(emphasis added).

Ms. English argues that the statute should be read in such a way as to avoid duplication of damages, and that the offset provision accordingly should apply to the amount of actual damages, rather than the amount of coverage. She contends that the code provision should be interpreted broadly, and that such a broad coverage theory would fulfill the legislative intent that an insured be fully compensated for her injuries before an offset would occur.

When interpreting a legislative provision, this Court's primary objective is to effectuate the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). Insofar as possible, the intent of the legislature should be determined by the natural and ordinary meaning of the words used, and not by a construction that is forced or which limits or extends the meaning. *Id.* Likewise, the Court must seek to ascertain the intended scope, neither extending nor restricting that intended by the legislature. *State v. Morrow*, 75 S.W.3d 919, 921(Tenn. 2002) (citing *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn. 1993)). Our interpretation must not render any part of a legislative act "inoperative, superfluous, void or insignificant." *Id.* (quoting *Tidwell v. Collins*, 522 S.W.2d 674,

676-77 (Tenn. 1975)).  Rather, we seek to give effect to the legislature's over-arching purpose. ***Merrimack Mut. Fire Ins. Co. v. Batts***, 59 S.W.3d 142, 151 (Tenn. Ct. App. 2001).  In so doing, we must interpret the statute involved reasonably, bearing in mind its objective, the harm it seeks to avoid, and the purposes it seeks to promote.  ***Voss v. Shelter Mut. Ins. Co.***, 958 S.W.2d 342, 345 (Tenn. Ct. App. 1997).

The courts of this state have interpreted the legislative intent of Tenn. Code Ann. § 56-7-1205 section as providing less than broad coverage.  ***Terry v. Aetna Cas. & Sur. Co.***, 510 S.W.2d 509 (Tenn. 1974); ***Shambely v. Walls***, 600 S.W.2d 247 (Tenn. Ct. App. 1980).  We have also held that policy provisions which reduce coverage where other coverage or benefits are available are valid as long as they do not deny payments to the insured of less than the minimum required by statute. ***Terry***, 510 S.W.2d at 513; ***Mathis v. Stacey***, 606 S.W.2d 290 (Tenn. Ct. App. 1980).  This Court has had recent occasion to revisit policies containing identical offset provisions in ***Green v. United States Automobile Ass'n***, No. E2000-02713-COA-R3-CV, 2001 Tenn. App. LEXIS 603 (Tenn. Ct. App. Aug. 16, 2001 ) (***no perm. app. filed***) and ***Akin v. Thompson***, No. M2001-00851-COA-R3-CV, 2002 Tenn. App. LEXIS 494 (Tenn. Ct. App. July 12, 2002)(***perm. app. pending***).  In both cases, we reiterated our interpretation of the statute as permitting clauses which provide that an insurer's liability pursuant to an uninsured motorist provision may be offset by other benefits received, including workers' compensation benefits.

The Englishes argue that the narrow interpretation of the uninsured motorist statutes as promulgated in ***Terry*** has been abrogated by subsequent amendments to the statutes, which reflect a legislative intent that the provisions be interpreted broadly.  We agree with this contention insofar as it is applicable to much of the statutory scheme.  In ***Alcazar v. Hayes***, the supreme court addressed the issue of whether an insured could recover under the terms of his uninsured motorist policy when he failed to comply with the notice provisions of that policy.  ***Alcazar v. Hayes***, 982 S.W.2d 845 (Tenn. 1998).  Utilizing a broad coverage approach, the court held that the policy could be enforced despite untimely notice where the carrier had not been prejudiced by the delay.  ***Id.*** at 853.

The ***Alcazar*** court addressed three rationales in its re-examination of the consistently held common law approach that notice is a condition precedent to recovery under an insurance policy regardless of prejudice to the carrier.  ***Id.*** at 849-850.  The court addressed the adhesive nature of contracts for insurance, the public policy goals of compensating tort victims, and "the inequity of the insurer receiving a windfall due to a technicality."  ***Id.*** at 850.  Noting that "stare decisis is not . . . a universal inexorable command,"  the court rejected the traditional common law approach and joined the majority of jurisdictions in holding that recovery under the policy was possible despite delayed notice where the insurance carrier had not been prejudiced by the delay.  ***Id.*** at 852-853 (quoting ***City of Memphis v. Overton***, 392 S.W.2d 98, 100 (Tenn. 1965)(quoting ***Burnet v. Coronado Oil & Gas Co.***, 285 U.S. 393 (1932))).

In ***Albin v. City of Memphis***, this Court addressed the issue of whether an insurer can, by express terms in the insurance policy, exclude uninsured/underinsured coverage for self-insured and government-owned vehicles.  ***Albin v. City of Memphis***, Shelby Law # 24, 1988 Tenn. App. LEXIS

537 (Tenn. Ct. App. Aug. 24, 1988)(*no perm. app. filed*). Upon examination of the 1982 amendments to the Uninsured Motorist Act, we held that the language utilized in the amended statute indicated that the legislature no longer intended to allow an insurer to exclude coverage for accidents involving uninsured/underinsured motorists by limiting the definition of an uninsured motor vehicle in its policy. *Id.* at *6. In *Albin*, we noted that the defendant insurance carrier relied for support upon *Terry* for the proposition that the uninsured motorist provisions should be narrowly construed. *Id.* We rejected this contention, holding that in enacting the 1982 amendments the legislature "took a significant step toward joining the majority of the states in providing broad uninsured motorist coverage." *Id.* at *5 (citing, Cf. *Terry v. Aetna Cas. & Sur. Co.*, 510 S.W.2d 509, 513 (Tenn. 1974)).

Notwithstanding this trend, we are unable to extend the rationale embracing broad coverage as found in *Albin* and *Alcazar* to the issue of whether the offset language as found in Tenn. Code Ann. § 56-7-1205 should be construed to prevent duplication of damages rather than coverage. In *Terry*, the supreme court specifically addressed the question of whether the word "duplication" as used in then Tenn. Code Ann. § 56-1152 (currently Tenn. Code Ann. § 56-7-1205) referred to duplication of damages or coverage. *Terry*, 510 S.W.2d at 509. In so doing, the court sought to reconcile its decision in *State Farm Mutual Automobile Insurance Co. v. Barnette*, 485 S.W.2d 545 (Tenn. 1972) with its earlier holding in *Shoffner v. State Farm Mutual Automobile Insurance Co.*, 494 S.W.2d 756 (Tenn. 1972). *Id.* The court noted,

> [u]nder a review of these cases there arises a possibility of conflict when these decisions are applied to a different set of facts. The solution to this problem requires that we come to grips with the legislative purpose contained in T.C.A. § 56-1152, as a section of our uninsured motorist statute.

*Terry*, 510 S.W.2d at 513. The *Terry* court discussed two approaches to offset provisions contained in uninsured motorist policies. *Id.* Under the first theory, which the court recognized as being the broad coverage approach embraced by a majority of jurisdictions, uninsured motorist statutes were interpreted to provide for full coverage up to the policy limits so long as the payments did not exceed the actual damages. *Id.* The second theory provides for limited coverage, under which set-off provisions in a policy operate to reduce coverage by amounts received from other sources. *Id.* The court noted that although the first approach is the majority approach in jurisdictions having similar uninsured motorist statutes, the Tennessee statute is distinguished by the provisions of Tenn. Code Ann. § 56-7-1205. *Id.* The court accordingly held that the enactment of Tenn. Code Ann. § 56-7-1205 reflected a

> legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum . . . and provisions in such policies . . . operating to reduce coverage where other coverage or benefits are available to the insured arising from accident causing the loss, are valid if such provisions do not operate to deny payments to the insured of less than the statutory minimum.

***Terry v. Aetna Cas. & Sur. Co.***, 510 S.W.2d 509, 513-14 (1974).

The Englishes contend that in light of legislative amendments to the uninsured motorist statutes, recent judicial opinions, and the inferences to be drawn from application of the made-whole doctrine to subrogation rights, the holding of the Supreme Court in ***Terry*** no longer reflects Tennessee public policy. The public policy of this state is "found in its constitution, statutes, judicial decisions and applicable rules of common law." ***Alcazar***, 982 S.W.2d at 851 (quoting ***State ex rel. Swann v. Pack***, 527 S.W.2d 99 (Tenn. 1975)). It is primarily the function of the legislature to determine public policy. ***Id.*** However, the judiciary may make public policy determinations in the absence of constitutional or legislative directives. ***Id.*** In ***Terry***, the Supreme Court interpreted the code as enacted by the legislature as permitting insurance carriers to include provisions that provide for the offset coverages in their uninsured motorist provisions. In ***Hudson v. Hudson Municipal Contractors, Inc.***, the court reiterated the holding of ***Terry*** as applied to workers' compensation benefits, stating, "it is clear that an insured party's right to recover under an uninsured motorist policy that contains a setoff provision . . . may be reduced by the amount that the insured has collected, or could collect, under the Workers' Compensation Law." ***Hudson v. Hudson Mun. Contractors, Inc.***, 898 S.W.2d 187, 189 (Tenn. 1995). Although the ***Hudson*** Court did not address the issue of whether this interpretation continues to reflect public policy in light of legislative enactments since ***Terry***, the holding of ***Terry*** clearly remains the law of this state. We additionally note that the legislature has had nearly thirty years to revise the statute in light of the supreme court's holding in ***Terry***, and has declined to do so. In the absence of a legislative directive, the holding of the supreme court is controlling precedent which may not be disturbed by this Court. The judgment of the trial court accordingly is affirmed on this issue.

### *Mr. English's Loss of Consortium Claim*

The Englishes contend that the trial court erred in awarding summary judgment to Allstate against David English for his loss of consortium. They argue that Mr. English's cause of action is a separate and distinct claim for which he is entitled to compensation. As we understand the Englishes' argument, they submit that since Mr. English has a distinct and separate cause of action, his injuries are independently compensable under the policy of insurance, notwithstanding any offset resulting from workers' compensation benefits to Ms. English. Since workers' compensation benefits to Ms. English do not compensate Mr. English for his loss of consortium, those damages should be covered by the uninsured motorist coverage.

Allstate contends that Mr. English's claim arises out of Ms. English's injuries. Citing ***Green***, *supra*, Allstate argues that the $100,000 per injury policy limitation provides the maximum amount of liability for all damages which derive as a consequence of the one physical injury. Allstate further argues that the contractual language of the policy relieves it of liability for any amount paid by workers' compensation for that bodily injury. Since the workers' compensation award was over $100,00, Allstate submits that its liability has been completely offset.

The "Limits of Liability" section of the Allstate policy provides:

1. The coverage limit shown on the declarations page for:

> a) "each person" is the maximum that we will pay for damages arising out of bodily injury for one person in any one motor vehicle accident, ***including all damages sustained by anyone else as a result of that bodily injury***.

In general, contracts of insurance are construed by the courts according to the general rules of contract construction. ***Tennessee Farmers Mut. Ins. Co. v. Witt***, 857 S.W.2d 26, 30-32 (Tenn. 1993). When called upon to interpret a contract, courts seek to ascertain the intent of the parties through the natural and ordinary meaning of the words employed. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). The courts of this state recognize, however, that contracts of insurance are not generally negotiated contracts in the traditional sense. ***Alcazar v. Hayes***, 982 S.W.2d 845, 850 (Tenn. 1998). They are in reality contracts of adhesion, the provisions of which are determined by the insurer. ***Id.*** at 851. Thus we resolve any ambiguity in a contract of insurance in favor of the insured. ***Id.***

The provision in the Allstate policy of insurance noted above clearly is not ambiguous. The $100,000 per injury coverage is the maximum liability Allstate contracted to incur as the result of any one bodily injury, including damages sustained by anyone else as a result of that bodily injury. While Mr. English has a separate and distinct cause of action against the tortfeasors in this case, his injuries are not covered under the policy of insurance where the maximum coverage has been offset by the workers' compensation benefits received by Ms. English. As noted above, the offset provision in the insurance policy offsets coverage, not actual damages. The policy limits for injuries arising from the one injury to Ms. English have been offset by the workers' compensation award, notwithstanding Mr. English's separate cause of action for loss of consortium. The judgment of the trial court accordingly is affirmed.

### *Conclusion*

Allstate's liability to Ms. English under the uninsured motorist provision in the contract of insurance has been offset by the workers' compensation benefits which Ms. English received. Loss of consortium damages suffered by Mr. English as a result of injuries to Ms. English are subject to the contractual limitation of $100,000 per bodily injury. Allstate's liability for loss of consortium damages, therefore, likewise is offset by the workers' compensation award to Ms. English. In light of the foregoing, the judgment of the trial court awarding summary judgment to Allstate is affirmed. Costs of this appeal are taxed to the Appellants, Sheri M. English and husband, David W. English, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE