IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 7, 2011 Session

EVEREST NATIONAL INSURANCE COMPANY v. RESTAURANT
MANAGEMENT GROUP, LLC ET AL.

Appeal from the Circuit Court for Washington County
No. 9984     Jean A. Stanley, Judge

No. E2010-01753-COA-R3-CV - FILED - APRIL 25, 2011

This is a declaratory judgment action filed by an insurance company against its insured and the insured's customer who allegedly was injured from a fall after stepping in a hole in the insured's parking lot. The insurance company asked for a declaration that it was not obligated to defend and indemnify the insured against the customer's personal injury claim. The insured filed a counterclaim asking for a declaration that the insurer was required to defend the claim and indemnify the insured against liability to the customer. On dueling motions for summary judgment, the trial court held that the insurance company was relieved of its obligation to defend and indemnify the insured because the insured waited five months before notifying the insurance company of the claim and that, as a consequence of the insured's delay, the insurer was prejudiced. During that five months, the insured repaired cracks in the parking lot where the fall allegedly occurred. The insured appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Russell W. Adkins, Kingsport, Tennessee, for the appellant, Restaurant Management Group, LLC.

Parks T. Chastain and Gordon C. Aulgur, Nashville, Tennessee, for the appellee, Everest National Insurance Company.

**OPINION**

I.

On or about September 20, 2007, Francis Evans fell in the parking lot of a Hardee's restaurant in Jonesborough. That Hardee's is one of several restaurants owned and operated by the defendant Restaurant Management Group, LLC ("RMG"). At the time of the incident, Mr. Evans was 78 years of age. He was hospitalized. Later that day Mr. Evans' wife, Reba Evans, called the Hardee's and reported to an employee of the restaurant that her husband was injured after stepping in a hole in the parking lot. About a week later, Mrs. Evans called a second time and spoke to the manager whom she asked, "You all are going to be responsible for this, right?" The manager completed a "Guest Incident Report" and promptly forwarded it to RMG. On October 8, 2007, RMG mailed Mr. Evans a form seeking more information about his fall. A few days later, Mrs. Evans returned the completed form to RMG. On October 31, 2007, RMG's president sent a letter to Mr. Evans asking for witness statements, a detailed description of the spot where the fall occurred or pictures of the spot, copies of any medical records and bills, and a description of the specific area where the fall occurred. Mr. Evans did not respond. Instead, he retained an attorney who sent a letter in January of 2008 informing RMG that he was representing the Evans regarding the injuries sustained by Mr. Evans' fall.

At an earlier time, on or about May 28, 2007, Everest had issued a commercial general liability policy to RMG. It was in effect when Mr. Evans fell in the Hardee's parking lot. RMG did not notify Everest of the claim until February 22, 2008, after it received the demand letter from Mr. Evans' attorney.

As we have indicated, Everest denied coverage and filed this action. Everest's denial of coverage was based upon a condition in the policy which states as follows:

> You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1) How, when and where the "occurrence' or offense took place;
> (2) The names and addresses of any injured persons and witnesses; and
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

The policy defines the term "occurrence" as an "accident."

Between the time of the accident and RMG's notification of Everest, RMG made repairs to the parking lot where Mr. Evans fell, which repairs included patching holes and "spider-web" cracks in the pavement. RMG's district manager, Todd Winstead, knew there were "issues" about an elderly gentleman falling in the parking lot when the decision was made to repair the parking lot. Winstead testified that, prior to the repairs, he inspected the parking lot and took some pictures; however, he admitted that he had no engineering expertise and did not have anyone with engineering expertise perform an inspection of the parking lot before the repairs.

At the time of Mr. Evans' fall, RMG owned 61 restaurants. Its deductible per claim was $5,000. It was RMG's experience with Everest that the company would always delegate the investigation of a claim to a company known as FARA, and that FARA, in turn, relies on RMG to gather the information required for the investigation. Nevertheless, FARA typically charges Everest something in the range of $3,000 to $4,000 per investigation. These charges are always passed along to RMG as part of RMG's $5,000 deductible. Some of the reports of accidents that RMG receives turn out to be inaccurate, and, ultimately, no payment is made on such claims. RMG made the determination that it should "mitigate its expenses by doing the initial legwork [to determine] which . . . reported incidents involved actual claims." Because the fall was in the vicinity of the restaurant's drive-through window which is constantly manned and because no Hardee's employee reported seeing the fall, RMG took the position that the report of Mr. Evans' fall did not rise to the level of a claim until RMG received a demand letter from counsel for Mr. Evans. RMG notified Everest of the claim on or about February 22, 2008. At that time RMG supplied two photographs of the location of the fall taken by a friend of Mr. Evans on the day of his fall. RMG also supplied the photographs taken by Winstead.

On these undisputed facts, the case came before the trial court on RMG's motion for summary judgment asking for a determination that, as a matter of law, Everest had a duty to defend and indemnify RMG, as pleaded in RMG's counterclaim. Everest filed is own motion for summary judgment asking the court to determine that, as a matter of law, Everest was not required to defend and indemnify RMG. The trial court denied RMG's motion and granted Everest's motion. Its specific findings upon which it granted summary judgment are

1. The notice provided by [RMG] to its insurer . . . was late.

2. Everest . . . was blatantly prejudiced by [RMG's] late notice because of, but not limited to, the fact that the parking lot where the fall occurred was paved prior to Everest . . . receiving notice.

-3-

II.

RMG filed a timely notice of appeal from the order granting summary judgment.  The only issue RMG raises is

> [w]hether . . . Everest . . . is obligated to defend and indemnify its insured, [RMG] against a personal injury claim that arose while a [c]ommercial [g]eneral [l]iability policy was in force between the parties.

III.

As can be seen from RMG's statement of the issue, this is not a case where the parties are arguing that the facts are in dispute or that the proponent of the motion did not carry the initial burden of shifting the burden of production to the opponent of the motion.  *See Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 5 (Tenn . 2008).  Rather, this is a case where the opponent of Everest's motion, RMG, is arguing that the facts are undisputed but required a judgment in its favor.  Thus, our review in this case is a simple *de novo* review of the trial court's conclusions of law to determine which of the two parties is entitled to judgment as a matter of law.  *See* Tenn. R. Civ. P. 56.04; *Finister v. Humboldt General Hosp.*, 970 S.W.2d 435, 437-38 (Tenn. 1998).  *See also Standard Fire Ins. Co. v. Chester O'Donley & Assocs.*, 972 S.W.2d 1, 5-6 (Tenn. Ct. App. 1998)(interpretation and application of insurance policy involves question of law "when the relevant facts are not in dispute").  It is axiomatic that there is no presumption of correctness with respect to the trial court's legal conclusions.

IV.

The outcome in this case turns on whether RMG gave timely notice of the claim, and, if not, whether Everest was prejudiced by the delay.  The first question is answered by the language of the policy and cases on point.  The policy requires that RMG notify Everest *"as soon as practicable* of an 'occurrence' or an offense which may result in a claim." (Emphasis added.)  The italicized language has been interpreted to "impos[e] a duty on an insured to give notice when he becomes, or should become aware of, facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer." *Lee v. Lee,* 732 S.W.2d 275, 276 (Tenn. 1987) (citing cases interpreting various phrases including "as soon as practicable," "immediate notice," and "notified promptly").

RMG argues that until it received the letter from counsel for the Evans, this did not "rise to the level of a claim." RMG bases its position on (1) its doubt that anyone could have fallen and been injured without someone seeing the accident, and (2) the failure of Mrs. Evans to respond to RMG's request for details. RMG's position is contrary to both the explicit language of the policy and the cases interpreting the contractual duty to give notice. The policy imposes a duty to give notice of any "occurrence," which simply means an "accident," "which *may* result in a claim." (Emphasis added.) The case law, as set forth in *Lee*, makes it abundantly clear that the insured cannot wait until it is convinced of the merits of a potential claim to provide notice; all that is required is knowledge of "facts which would suggest . . . that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer." *Lee*, 732 S.W.2d at 276. Within ten days of Mr. Evans' fall, RMG knew that Mr. Evans was claiming RMG was responsible for his injuries sustained in a fall caused by a hole in the company's parking lot. We hold that, as a matter of law, RMG was obligated at that time to notify Everest of the potential claim.

RMG argues that even if the notification was untimely, the litigious nature of its customers combined with its doubts in this particular case excuse the untimeliness of the notice. The only authority offered by RMG in support of its argument is an Alabama case and the recognition in *Spradlin v. Columbia Ins. Co.*, 232 S.W.2d 605, 609 (Tenn. Ct. App. 1950), that "delay in giving notice . . . within the prescribed time may be excused under certain circumstances." *Spradlin* is distinguishable from the instant case by the fact that the policyholder in that case did not even know of the existence of the policy, which was purchased by his finance company, until after the 60-day window specified in the policy for reporting claims had expired. The Court held that the "manifest impossibility" of reporting under a policy that the insured did not know existed excused the delay. *Id*. at 608-09.

The Alabama case, relied upon by RMG is *McDonald v. Royal Globe Insurance Co*, 413 S0.2d 1046 (Ala. 1982). *McDonald* involved a delay by an insured nightclub of approximately ten months in reporting the underlying claim to its insurance company. The underlying claim was a customer's allegation that he was injured by the club's employee in a fight that took place when the employee undertook to eject the customer and some of his friends. The trial court submitted to the jury the question of whether the nightclub offered a valid excuse for not giving notice to the insurer of the customer's threat to sue unless the club dropped criminal charges and paid the customer's medical bills. The jury found in favor of the nightclub but the trial court granted a judgment to the insurer notwithstanding the verdict in favor of the nightclub. The Alabama Supreme Court overturned the trial court's judgment notwithstanding the verdict and re-instated the jury's verdict. There are several reasons we are not persuaded by *McDonald*. First, the facts of *McDonald* distinguish the result. The customer in *McDonald* made one contact with the insured after the incident, and, in that contact, tried to barter away the criminal charges. The nightclub manager testified

that he often received hollow threats of lawsuits and simply thought this was another hollow threat. In the present case, there were several exchanges between the Evans and RMG, and there were no criminal charges being used for barter. Also, in **McDonald**, 'the evidence was in sharp dispute" about the underlying facts. **Id**. In Tennessee, where, as here, the facts concerning the exact terms of the policy and the timing of the notice are undisputed, the question of reasonableness of a delay in notice is a question of law for the court. **Gibson Guitar Corp. v. Travelers Indemnity Co.**, 947 F.Supp 329, 331 (M.D. Tenn. 1996)(*citing Lee*, 732 S.W.2d at 276. The **Gibson** court's rejection of the insured's losing argument in that case is persuasive. It states:

> The burden of offering an explanation or excuse for failure to give notice must rest heavily upon the insured since he seeks relief from the plain terms of the contract of insurance coverage. Whether the facts establish a reasonable basis for late notice is determined by all the surrounding circumstances.

> *  *  *

> Given the Tennessee law which holds that an insured must give notice when it becomes aware of a potential claim, the Court finds that Plaintiff had an obligation to notify Defendants promptly when the counterclaims were filed against it. *Plaintiff's assertion that it had to investigate the claims falls short of a reasonable excuse. The very purpose of the notice requirement is to give the insurance companies opportunities to investigate.*

> In *Nationwide v. Shannon*, 701 S.W.2d 615 (Tenn.Ct.App.1985), the plaintiffs argued that they were excused from giving notice because they thought there would be no liability. In sustaining the position of the insurer, the court said:

> "The trouble with the contention of the plaintiffs, as thus given the fullest possible effect, is that they assumed to become the judges of the prospect for claim and suit, whereas one of the purposes of the notice of accident is to afford opportunity to the insurer, the responsible party in case the policy is to continue in effect, to decide that very question and to act in accordance with its own judgment."

-6-

> *Nationwide*, 701 S.W.2d at 620 (citations omitted). Similarly here, Plaintiff seems to argue that it had a duty to judge the viability of the claims before notifying the insurer.

*Gibson Guitar Corp.*, 947 F.Supp. at 332 (emphasis added, some citations omitted). RMG's position in this case, though artfully stated to sound otherwise, is the same as the losing argument in *Gibson*. We hold that RMG's excuse fails as a matter of law.

The final matter for consideration is whether Everest was prejudiced by the delay. Even if notice of a claim is untimely, the insurer does not automatically escape coverage; if there is no prejudice from the delay, the contractual obligations of the insurer continue. *Alcazar v. Hayes*, 982 S.W.2d 845, 853 (Tenn. 1998). However,

> when an insured has failed to provide timely notice of a claim against it in accordance with a liability insurance policy, it is presumed that the insurer has been prejudiced by the breach. The insured may rebut this presumption by proffering competent evidence establishing that the insurer was not prejudiced by the insured's delay.

*American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 818 (Tenn. 2000). One of the factors to be considered in determining prejudice is whether there have been "physical changes in the location of the accident during the period of the delay." *Alcazar*, 982 S.W.2d at 856. In the present case, it is undisputed that RMG made repairs to the parking lot where Mr. Evans fell, even though it knew there were "issues" about Mr. Evans' fall, before it ever gave Everest notice of the claim. We agree with the trial court that RMG's alteration of the site demonstrates prejudice to Everest. The only mitigating evidence is that Everest was eventually supplied two photographs of the site of the accident taken by a friend of Mr. Evans and an unspecified number of photographs taken by RMG just prior to making the repairs. None of those photographs is in the record before us. On the record before this court, we hold that, as a matter of law, RMG has not rebutted the presumption of prejudice to Everest from the untimely notice.

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Restaurant Management Group, LLC. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed in the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE